*June Term, 1861.*

FORD
v.
CH. & N. W. R.
R. Co.

---

FORD vs. THE CHICAGO & NORTH WESTERN RAIL ROAD COMPANY.

It is settled law in this state that the proprietors of lots bounded by a public street within a recorded town plat or village, take to the center of the street and own the soil, subject to the public easement.

This being so, a rail road company cannot appropriate and occupy such a street with the track of its road without the consent of the proprietors of the lots bounded by the street, or compensation made to them; and neither the legislature nor the municipal authorities have any power to dispense with the making of such compensation.

| 14 | 609 |
|---|---|
| 79 | 95 |
| 14 | 609 |
| 95 | 567 |
| 14 | 609 |
| 103 | 88 |
| 14 | 609 |
| f106 | 102 |
| e106 | 103 |
| f106 | 104 |
| 14 | 609 |
| 112 | ² 20 |

VOL. XIV—39

June Term,
1861.

FORD
v.
CH. & N. W R.
R. Co.

Where a railroad company locates its track in such public street without taking any steps to acquire the right of way by the assessment and payment of damages to the owners of lots bounded by the street, the latter are entitled to an injunction restraining the railroad company from digging up the soil of the street, laying down its rails, or doing any other act tending to encumber the street or obstruct its free and common use.

Whether the land selected in this case by the railroad company for its track was *necessary* to its use, or whether some other route might not have been taken without very great inconvenience, was a question committed entirely to the discretion of the company, and not a question for judicial determination.

Where the owner of lots bounded by a public street in a city, brings an action against a railroad company to recover damages caused by digging up the street in front of his lot, to construct the road bed of the company, without his consent and without any compensation having been assessed or tendered, and also for an injunction to restrain the company from laying down its rails in the street and running cars thereon, it *seems* that the past damages, or those occasioned by the trespass, may be assessed by the court, or the judge may perhaps order a jury for that purpose.

The permanent damages, or those which would accrue to the plaintiff by the con tinued use of the street by the company, can only be ascertained in the manner prescribed by the statute.

APPEAL from the County Court of *Winnebago* County.

This was an action by the owner of certain lots abutting on Broad Street in the city of Oshkosh, to recover damages caused by the construction of the road bed of the defendant through the street in front of his lots, some of which were situated on each side of said street, and for a perpetual injunction to restrain the defendant from laying its track in said street, or digging up the soil thereof, or doing any other act tending to encumber the street, or to obstruct its free and common use. The complaint showed that Broad street was a public street in the city of Oshkosh, the street and lots having been platted by the plaintiff and others, and the plat acknowledged and recorded pursuant to chap. 41, R. S., 1849, relative to town plats. The defendant had not made or offered to make the plaintiff any compensation for the use of the street, but claimed the right to use the street under its charter, and alleged in its answer that its entry upon the street and excavation of the soil were necessary for the construction of its road, and did not permanently obstruct the street, and that it intended, as soon as the road was completed through the street, to restore the street to its former condition and usefulness, as far as could be done consistently

June Term, 1861.

FORD
v.
CH. & N. W. R. R. Co.

with the defendant's rights and privileges. The pleadings in the case, and the stipulations, left but three questions of fact in dispute: the necessity of taking part of the street for the use of the railroad; the effect of such user upon the usefulness of the street for any other purpose: and the amount of damages already sustained by the plaintiff in consequence of the construction of the road bed in the street. The defendant paid into court a jury fee, and demanded that all the issues should be tried by a jury, but the court decided that it would try all the issues except the question of damages, and would afterwards empannel a jury to try that question. To this ruling the defendant excepted. On the trial, the plaintiff testified that the embankments constructed by the defendant on the street upon or in front of some of his lots, were from one and a half to two feet high, and from ten to fifteen feet wide. One of the engineers of the defendant testified, that Broad street, opposite the plaintiff's lots, is sixty-six feet wide; that the center of the railroad track in front of said lots was six feet east of the center of the street; that the railroad takes ten feet in width; that opposite one of the plaintiff's lots, the embankment for the road bed is nearly with the level of the street; opposite to others it is about six inches above the street; opposite to some others of his lots the filling is from a foot to a foot and a half; opposite to others it will average about ten inches; and opposite to one of his lots there is an excavation a foot deep: that the ballasting of the road will raise it from twelve to eighteen inches higher; that there are no houses on any of the plaintiff's lots except one; that Broad street is not a business street, and is not very much needed for carriages or teams, and was the most feasible and direct route for said railroad. As to the effect of appropriating part of the street to the use of the railroad, only one witness was examined, and he testified that the street was not so obstructed by the railroad as to prevent its being used as a highway; that in his opinion the "railroad does not impede the travel on Broad street in front of plaintiff's lots," but that it was generally considered as not quite safe to drive teams on a street where engines and cars are running; that the engines were

apt to frighten horses, and that was "an impediment to travel." Evidence was introduced on the part of the plaintiff tending to show that there was no necessity of appropriating the street to the use of the railroad, because there were other adjoining lands which could be as conveniently occupied for that purpose, without increasing the distance and without incurring more expense than is usual in grading a railroad through a level country. The defendant offered to prove that it was its intention to leave the street, except that portion actually occupied by the track, in the same condition as it was originally, but the evidence was rejected as irrelevant, and the defendant excepted. The court found as facts, among other things, that the construction of the defendant's railway upon Broad street permanently impaired the usefulness of that street as a public highway, and permanently injured the lots of the plaintiff; and that the running of the defendant's cars and locomotives over said street would always constitute an interference with and nearly supersede the use of said street as a highway; that said street lies on or nearly on the defendant's route, but that there were no physical difficulties to prevent the construction of the railroad on the west side of Broad street without making the distance any greater, and that the only necessity for taking Broad street was, that the defendant thereby avoided considerable expense in the form of land damages and grading. The court held as conclusions of law that the plaintiff owned the fee in the soil to the center of Broad street in front of his said lots, subject only to the public easement which, by virtue of the dedication, vested in the city of Oshkosh, for the purpose of a street or highway; that there was no such necessity for the taking of Broad street for defendant's road as is contemplated by law and the charter of the company; that the defendant had no right to locate its road upon Broad street without the consent of the plaintiff, or without appropriating the same according to law and making the plaintiff just compensation therefor; that the defendant, in entering upon and excavating the soil of said street without the consent of the plaintiff and without any appraisal and payment of damages, or compensation to him, was

guilty of an unwarrantable intrusion and trespass upon the property of the plaintiff; that the plaintiff was entitled to the perpetual injunction asked for in the complaint, and, as an incident to the equitable relief, was entitled to recover the damages already sustained by him in consequence of the unlawful acts of the defendant. The plaintiff, thereupon, waived all but nominal damages. The defendant excepted to the findings of fact and conclusions of law above stated. Judgment for nominal damages, and for a perpetual injunction according to the prayer of the complaint.

*Bouck & Edmonds* for the appellant:

1. The plaintiff was not the owner of the fee in the street, but upon the recording of the plat the city corporation became vested with the qualified fee, in trust for the use of the public as a street, and the interest of the plaintiff in the street is a mere possibility of reverter at most, and not a reversion, nor such an interest as courts will protect. R. S. 1849, chap. 41, sec. 5; *Canal Trustees vs. Havens*, 11 Ill., 556; 13 id., 54, 312; *Town of Lebanon vs. Com. of Warren Co.*, 9 Ohio, 81. Counsel commented upon the cases of *Kimball vs. The City of Kenosha*, 4 Wis., 321; *Goodall vs. City of Milwaukee*, 5 id., 32; *City of Milwaukee vs. Mil. & Beloit R. R. Co.*, 7 Wis., 85, and endeavored to distinguish them from the present case. 2. Where the fee of the street is vested in the municipal corporation for the use of the public, the injury, if any, to lot owners, arising from the use of the street for railroad purposes, is consequential and does not come within that clause of the constitution which prohibits the taking of private property for public use without compensation. *Hatch vs. Vermont Cent. R. R. Co.*, 25 Vt., 49; *Same case*, 28 id., 147; *Drake vs. Hudson R. R. Co.*, 7 Barb., 509; *Moses vs. P., F. W. & C. R. R. Co.*, 21 Ill., 516. The constitutional provision does not extend to the case of property injured or destroyed. *Radcliff's Ex'rs. vs. The Mayor, &c.*, 4 Comst., 195-6; *O'Connor vs. Pittsburgh*, 6 Harris, 187, 190; *Callender vs. Marsh*, 1 Pick., 418; *Cushman vs. Smith*, 34 Maine, 247. 3. Where the lot owner is also the feeholder in the street there is more conflict among the authorities. In Kentucky it is held that a railroad is not *per se* a public nuisance, nor

an invasion of the private rights of the lot owners, and that even where a street is not the property of the municipality, but continues in the individual who dedicated it as a highway, the use thereof for rails and rail cars is not *per se* inconsistent with the dedication, and is neither a public nor private wrong. This is the settled law of that state ( *Wolfe vs. Cov. & Lex. R. R. Co.*, 15 Ben Mon., 404), and of Pennsylvania (*In re Phil. & T. R. R. Co.*, 6 Whart., 45 ; *Com. vs. Erie & N. E. R. R. Co.*, 27 Pa., 339). In Massachusetts, Connecticut and New Hampshire, the statutory provisions are more extensive than the constitutional, and allow damages where no land or materials are taken. 21 Conn., 294 ; 1 Foster, 359 ; 4 id., 114, 179. It was considered the settled law of New York, until recently (10 Barb., 360 ; 11 id., 450 ; 18 id., 222); but has lately been repudiated by the court of appeals, in 16 N. Y. Rep., 97 ; which decides that the use of a highway for a railroad company's cars is a *private* user. If this be law, then the use of *any* lands for such purposes by a railroad company is also a private and not a public user. But this position is wholly irreconcilable with the resolution of the court of errors of New York in 18 Wend., 77, and with the course of legislation and judicial decision upon the subject, and with the principle adopted in 8 Wend., 87, 88, hitherto supposed to be the settled law of that state. 19 Wend., 128 ; 1 Hill, 189, 191. In the case in 16 N. Y., 97, none of these cases were alluded to. 4. All the cases agree that a railroad track in the streets of a city is not *per se* a purpresture nor a nuisance. 8 Dana, 289 ; 16 N. Y., 103 ; 7 Barb., 566, and all the cases above cited. But a lawful authority may be exercised in an unlawful manner, to the injury of individuals, who in such case may have an action for the injury. This was the case in *Fletcher vs. Aub. & Syr. R. R. Co.*, 25 Wend., 462 ; although the decision was not put upon that ground. See this case criticised in 10 Barb., 366. The case of *Presb. Soc. vs. A. & R. R. R. Co.*, 3 Hill, 567, might have been put upon this ground. It came up on demurrer to the plea, which did not state that the highway had been, or would or could be, restored to its former state of usefulness. The case of *Williams vs. N. Y. C. R. R. Co.*,

16 N. Y. Rep., 97, is open to the same criticism. The case at bar is free from these objections. The answer alleges, and proof was offered to show, that the defendant intended, as soon as the railroad was completed on the street, to restore the street to its former condition and usefulness, so far as it could be done consistently with the defendant's rights and privileges; and it was entitled to a reasonable time in which to do this. *Adams vs. Sar. & Wash. R. R. Co.*, 11 Barb., 450. 5. If the railroad is a public nuisance, the plaintiff has not made such a case of special injury to himself as will entitle him to maintain an action. *Lansing vs. Smith*, 8 Cow., 157—167; Argument of O'Connor, 22 Barb., 442 to 445, and cases cited. 6. That the city neither gave nor refused its assent is no objection. 7 Barb., 540—558. 7. The judgment should at least be modified so as to allow the use of the street on making compensation.

*N. L. Whittemore* and *H. L. Palmer*, for respondents:

1. The cases cited by the appellant, 4 Wis., 321 and 7 Wis., 85, and the case of *Gardiner vs. Tisdale*, 2 id., 195, settle the doctrine that the owners of lots bounded by a public street own the soil to the center of the street, subject to the public easement. 2. It follows that this action might be sustained. 16 N. Y., 97; 3 Hill, 567; 25 Wend., 462; 5 Wis., 32; 6 id., 605. The use of a street for a railroad is a use exclusive in its nature, and entirely different from and inconsistent with its use as a public highway, and it cannot be so appropriated without compensation to the owner of the soil. 16 N. Y., 97; 4 Cush., 63. For the power of the company to take lands and use streets, so far as such power is granted by the legislature, see chap. 137, Laws of 1856, secs. 4, 5, 18, 29; chap. 55, Laws of 1857, sec. 8. The authority granted to the defendant by these statutes does not relieve it from the duty to make compensation for all private property appropriated by it, before it can acquire the right to such property; and no compensation having been made, the plaintiff was entitled to the relief granted to him by the courts below. 3 Wis., 714; 6 id., 605; sec. 13, Article I, of the constitution.

June Term,
1861

FORD
v.
Ch. & N. W. R.
R. Co.

December 30.

*By the Court,* DIXON, C. J. However much we might be inclined to yield to the argument of counsel were the question a new one, it is too well settled to allow it now to be drawn in dispute before this court, that the proprietors of lots bounded by a public street within a recorded town plot or village, take to the center of the street and own the soil subject to the public easement. *Kimball vs. Kenosha,* 4 Wis., 321; *Goodall vs. Milwaukee,* 5 id., 32; *Milwaukee vs. Mil. & Beloit R. R. Co.,* 7 id., 85; *Mariner vs. Schulte,* 13 id., 692.

Upon questions of this nature we shall make no attempt to produce new arguments to sustain or overthrow our own decisions already made. Our intention is to rest on them, as far as they go, as absolute and incontrovertible authorities.

It being established that the proprietor of the adjacent lot owns to the center of the street, subject only to the right of the public to occupy and use the land as an ordinary highway, the conclusion of the court of appeals in *Williams vs. Central R. R. Co.,* 16 N. Y., 97, that a railroad company cannot appropriate and occupy it with the track of its road without the consent of such proprietor, or without compensation made to him, and that neither the legislature nor the municipal authorities have any power to dispense with such compensation, seems irresistible. I will not attempt to treat a question which is there discussed at length and with so much ability. The authorities are fully reviewed and the subject exhausted; and had I the vanity to suppose myself capable of throwing new light upon it, which I have not, the amount of business that now occupies my attention would prevent. The reason is stated in few words by Chief Justice SHAW in the case of the *Inhabitants of Springfield vs. Connecticut River Railroad Company,* 4 Cush., 71. "The two uses are almost, if not wholly, inconsistent with each other; so that taking the highway for a railroad will nearly supersede the former use to which it had been legally appropriated." The dedication to the public as a highway enhances the value of the lot and renders it more convenient and useful to the owner. The use by the railroad company diminishes its value and renders it inconvenient and comparatively useless.

It would be a most unjust and oppressive rule which would deny the owner compensation under such circumstances. We think the doctrine of the court of appeals is sound and correct, and, without further comment, adopt their opinion as expressing our views upon the subject. The railroad company having taken no steps to acquire the right of way by the assessment and payment of damages to the plaintiffs, it follows that the judgment below must be affirmed.

So far as the judge below placed his decision on the ground that there was no *necessity* of appropriating the street to the use of the railroad, because there were other adjoining lands which could be as conveniently occupied for that purpose, he was clearly in error. The propriety of taking property for public use is not a judicial question, but one of political sovereignty, to be determined by the legislature, either directly or by delegating the power to public agents, proceeding in such manner and form as may be prescribed. *The People vs. Smith*, 21 N. Y., 595. Whether the company should appropriate this particular piece of land or that to the use of the road, was therefore, under their charter, a matter which was committed entirely to their discretion; and the logic of the county judge, if good for anything, would be sufficient to defeat the company's location of the line of their road in ninety-nine cases out of every hundred; for in about that proportion of instances, the land selected is not so indispensably necessary that some other might not be taken without very great inconvenience.

It seems that the past damages, or those occasioned by the trespass, might have been assessed by the court (*Williams vs. Railroad Co., supra*); or the judge might perhaps have ordered a jury for that purpose; but the permanent damages, or those which would accrue to the plaintiff by the continued use of the land by the company, can only be ascertained in the manner prescribed by the statute. *Davis vs. La Crosse & Milwaukee R. R. Co.*, 12 Wis., 16; *Pettibone vs. Same*, [ante, p. 443.]

Judgment affirmed.