THE SOUTH CAROLINA RAILROAD COMPANY *et al.*, plaintiffs in error, *vs.* H. L. STEINER *et al.*, defendants in error. The same parties *vice versa.*

1. We hold, from the facts disclosed by this record, that equity may take jurisdiction by bill in the nature of a bill of peace, under section 3166 of the Code, and bring all the parties, plaintiffs and defendants, into the forum, and adjust their equities and several rights by one decretal verdict, and the inquiry upon the truth of such case to cover not only past but future damages, so as to stop all future or further litigation in or about the same subject-matter, and operate as a complete inves-

The South Carolina Railroad Co. *et al. vs.* Steiner *et al.*

titure of the legal right, free from further claim of damages to the rail-roads in their use of Washington street, Augusta, for railroad pur-poses by steam power, within the legitimate scope of the legislative right granted to them upon their compliance with the verdict.

2. The act of the municipal authorities, sanctioned by the Legislature, gives to the railroad companies the right to use the street in contro-versy. But the failure by the Legislature to provide for the assess-ment of damages by way of compensation to the property owners on said street, does not take away the right of the party to his suit at law for damages under section 2692 of the Code.

3. While the use of a public street may be granted to railroads to lay bars of iron on to run over with trains, without endangering the street by obstructions or embankments, yet if the use of locomotives inflicts injury upon those who live on the street, by throwing smoke through the houses along the streets, or by its weight shaking them or break-ing the plastering or walls, etc., and by the noise and screeching of whistles and engines, the legislative right to run over the street does not make such acts harmless, and the injury inflicted upon the legal rights of the parties is not *damnum absque injuria.* Upon the trial, the rule of evidence should be limited to actual damage. The right to use the street with reasonable obstruction in the passage of trains is permitted by law, and is not an element of damage, nor is the jolting over the iron rail an element, nor the apprehension of the safety of children, nor are possibilities in cases of sickness, nor any inconven-ience to visitors, not obstructing ingress or egress, nor any fanciful or speculative damages, or sentimental injuries elements of damage. But the damage which the law recognizes must be actual, tangible and determinable by proof. And the depreciation of the property not only from obstructions to access, but by smoke and injury to walls, etc., and traceable as effect from cause and the like may be inquired into to form the total of the injury.

Judgment affirmed so far as equitable jurisdiction is sustained and the suit at law enjoined and reversed as to the conditions required to be filed in writing.

Railroad. Streets. Equity. Eminent domain. Dama-ges. Before Judge GIBSON. Richmond Superior Court. June Term, 1871.

This cause was as follows: "The South Carolina Railroad Company," "The Georgia Railroad and Banking Company," "The Central Railroad and Banking Company of Georgia," "The Charlotte, Columbia and Augusta Railroad Company,"

which corporation, by reason of consolidation, has succeeded to all the rights and franchises of the Columbia and Augusta Railroad Company, and the Augusta and Summerville Railroad Company, all corporations chartered by this State, or recognized by the laws thereof, complain against Henry H. Steiner *et al.*, and also against all others who may bring like suits to those hereinafter described.

They claim, and are now, and have been (the three first, actually, and last named by delegating its authority to others,) since the 9th day of November, 1867, and the Charlotte, Columbia and Augusta Railroad, since June 16th, 1869, exercising a right, severally, but under like authority, to transport railroad trains for freight and passengers, drawn by locomotive steam power over a certain railroad track in the city of Augusta, in said county, laid down in Washington street, in said city, from Reynolds street to Telfair street, and thence to the Georgia Railroad passenger depot, and to the Central Railroad freight depot, save that the said Central Railroad and Banking Company say that they have run no trains north of Greene street.

By a contract, under seal, between the City Council of Augusta and the trustees of the Academy of Richmond county, of the one part, and the South Carolina Railroad Company of the other, entered into on the 10th day of August, 1852, on certain terms therein shown, the said company was authorized to lay down a railroad track in the centre of said Washington street, from Reynolds to Watkins street, and use the same for the transportation of freight by horse power; and said track was laid down in a short time thereafter.

On the 31st day of July, 1857, by another contract between the same parties and the Georgia Railroad and Banking Company, the said company was permitted to connect their said track with the track of the said Georgia Railroad, which was accordingly done. And on the 19th day of January, 1867, under the ordinances of said city, of that date,

The South Carolina Railroad Co. *et al. vs.* Steiner *et al.*

said track was continued on Washington street, southward, to connect with the Central Railroad track, by the Augusta and Summerville Railroad Company.

On the 7th day of November, 1867, an ordinance was adopted by said City Council authorizing the use of steam power on said Washington street, by the said Augusta and Summerville Railroad Company. And on the 13th day of March, 1868, by an ordinance, the said City Council authorized the Augusta and Summerville Railroad Company to contract with the South Carolina Railroad Company for the use of the track of the latter company from Reynolds street to the Georgia Railroad depot, which is the same track first before described ; and, in pursuance thereof, on the 16th day of March, 1868, by a deed of lease and covenants entered into between the two said companies, the said track was leased to the said Augusta and Summerville Railroad Company during the terms of their charter, in consideration that said last named company would haul by steam the freight and passenger cars of the said South Carolina Railroad Company, between the depots of said company and the Georgia Railroad Company. And on the 2d day of March, 1868, an agreement, in writing, was entered into between the said Augusta and Summerville Railroad Company, and the said Central Railroad and Banking Company, by which the first named company agreed to transport the trains of the other between the depot of the Central Railroad and the other depots in said city. And on the 5th day of July, 1869, an agreement was entered into between said Augusta and Summerville Railroad Company and said Columbia and Augusta Railroad Company, by which the former company agreed to transport the trains of the latter between the several depots.

And on the.........day of........., 1868, by a verbal contract between the said Augusta and Summerville Railroad Company and the Georgia Railroad and Banking Company, the said former company agreed, for a valuable consideration, to transport the trains of the latter company between the

various depots, in like manner as with the other above named companies.

And, inasmuch as the said Augusta and Summerville Railroad Company was unprovided with locomotives and engine hands of its own, by an understanding between it and the several other companies, on terms satisfactory to them, the transportation agreed to be drawn by said contracts has been actually performed by the locomotives and engine hands of the respective companies.

And this transportation of trains by authority of said ordinances, done by the consent and authority of the Augusta and Summerville Railroad Company, is the same complained of by the defendants in this bill in their several actions hereinafter named; and no other running of trains or engines has been done by them, or either of them, than according to said ordinances and contracts, and the permission of said City Council of Augusta.

And in addition to the right founded on the foregoing premises, which is common to all the companies, the Charlotte, Columbia and Augusta Railroad Company say that, by ordinance of the City Council of Augusta, adopted April 27th, 1869, the Columbia and Augusta Railroad were expressly authorized to cross the Savannah river and connect with the tracks of the Augusta and Summerville Railroad on Washington street.

The South Carolina Railroad Company and the Charlotte, Columbia and Augusta Railroad Company also say that, on the 1st day of June, 1869, a contract was entered into between them and the City Council and the said trustees of Richmond Academy by which, for a valuable consideration, the said City Council conveyed to said railroad companies, in perpetuity, severally and respectively, the right to use said track on Washington street, with steam or other power.

And all the said ordinances and contracts between said City Council and said Augusta and Summerville Railroad Company, have been confirmed by the Act of the Legislature, approved October 26th, 1870.

The South Carolina Railroad Co. *et al. vs.* Steiner *et al.*

Washington street is sixty-five feet in width, and said railroad track is five feet in width, located in the centre of the street, and on the same level as the street, and offers no obstruction to the crossing of the street, at any point, beyond a slight jolting of vehicles; whereas, before said track was laid, there was an open ditch or drain, from time immemorial, down the centre of said street, which effectually prevented any crossing thereof save at the crossings of other streets, which drain has been covered by the track aforesaid, at the expense of complainants.

The fee of the soil of said Washington street is in the State of Georgia, subject only to its use as a public highway by the people of this State; said street was laid out as a street and public highway when Georgia was a British colony, on land belonging to the Proprietory Trustees, and afterwards to the Crown, and the title to the same has never passed out of the sovereign to any private person; and they pray that any private person who asserts a right as of fee in the land covered by said street may be held to the strict proof thereof.

The foregoing premises vest in them the legal right to run their trains by steam power on said track on Washington street without responsibility for damages to any private individual for so doing.

Yet they are now, and are likely to be hereafter, greatly harassed and put to costs and expense by suits for damages by individuals claiming to be injured in depreciation of real estate alleged to be caused by the exercise of their said rights.

And already actions for damages to real estate on Washington street, caused by the running of trains as aforesaid, have been commenced against each of them severally—except the Augusta and Summerville Railroad Company—by the said defendants in this bill, being, in all, twenty-eight suits, of which all but the action of Mrs. Mary M. Clanton were brought to January Term, 1871, of this Court; and the suit of the said Mrs. Clanton was brought to June Term, 1871.

And all said actions are still pending, and are for damages upon the same grounds. Such actions being merely for damages for a limited period, cannot finally settle the controversies between the parties, but they are liable to continual and repeated litigation, which is contrary to the policy of the law. And moreover, in such actions, if damages are held to be recoverable, it would be impossible for a jury to assess what any one company should pay without considering the liability of the other companies, on which each one ought to be heard. And for other reasons, complete justice cannot be had under the mode of proceeding of the common law; and, therefore, complainants bring this their bill, in the nature of a bill of peace, to the end that all these matters may be heard and determined at once, and protection be afforded against a multiplicity of suits. ·

They pray that said defendants may, without oath, answer this bill, and that they be restrained, by the writ of injunction, from further prosecuting their said ·actions at law, until the further order of the Court, and that a decree may be had upon the hearing of this bill, establishing and confirming to each of complainants the right to use said railroad track for the carrying of freight and passengers by steam power, or other power, and that said defendants be perpetually enjoined from prosecuting said actions, or any future actions, on account of their so using said railroad track.

Or, if it should be determined that said defendants are entitled to damages, that they be required, respectively, to establish their claim thereto, and that their damages be assessed up to time of decree; and also, that such other sum be assessed to each as will be full compensation in the future for the perpetual use of said track, in manner aforesaid; and that complainants have the option either to pay the damages already accrued, and abandon for the future the use of steam on said street, or to pay the total sum, and thereby acquire against said defendants, their heirs, representatives and assigns a right in perpetuity to use said track with steam power.

The South Carolina Railroad Co. *et al. vs.* Steiner *et al.*

And that, in either event, the decree be final between the parties, and that, by the same decree, the damages to each defendant, if any are found due, be divided and apportioned between such of complainants as are sued in said actions according to equity.

To the bill was attached copies of said contracts, etc. The Chancellor ordered the defendants to show cause why the injunction should not issue according to said prayer. They demurred to the bill upon the grounds that it was multifarious and contained no equity calling for injunction.

The Chancellor ordered the injunction to issue against each of said defendants, who did not, in thirty days, file in the Clerk's office of said Court, a consent to accept the final verdict and judgment of said Court as full compensation for all damage sustained by him or her; as to each who would file such consent the injunction was refused.

The complainants say the Chancellor erred in not granting the injunction unconditionally, and defendants say that he erred in not dismissing the bill and in granting any injunction.

WILLIAM T. GOULD; W. HOPE HULL; JOHNSON & MONTGOMERY; D. JACKSON; FRANK MILLER, for the railroad companies. Multiplicity of suits ground for injunction: R. Code, sec. 3166; Story's Eq. Juris., secs. 853, 854; 2 John, C., 281; Adams' Eq., sec. 201. The injury was *damnum absque injuria:* 28 Ga. R., 46; 34th, 326; 5 Rich., 583. Prospective damages may not be recovered: 15 Ga., 61. The damages are consequential: R. Code, secs. 3016, 3017. The claim is for damages for a nuisance authorized by law, and, therefore, bad: 28 Ga., 418; 15th, 61; 1 Epp. R., 148; 2 Gray, 54–339. The street belonged to the State and defendants cannot recover for a use of it permitted by the State: 32 Conn. R., 579; 33 Missouri R., 128; 3 Bar., 459; 10th 26; 7th, 508; 8th, Dana R., 301; R. M. Charlton's R., 342–350; 33 Ga. R., 617. Defendants, being citizens, are

bound by action of the city authorities: 5 Ga. R., 569; 2 Kent's Com., 293; 3 Tenn. R., 592; 13 Bar., 646. The granting the permission to use said street, as aforesaid, is not exercising the right of eminent domain: 10 Bar., 26; 3d, 458; 13th, 646; 37th, 357; 38th, 369; 4 How. Pa., 182; 5 Rich., 583; 33 Miss. R., 128; 29 Ill. R., 279: 32 Conn., 579; 12 Ind. R., 552.

HOOK & GARDNER; C. SNEAD; CLARK & SPENCER; McLAWS & GANAHL, for defendants. The railroads claim against public right, and, therefore, cannot enjoin: 2 Story's Eq., sec. 858; Maddox Ch., 171. When bill of peace lies and to avoid multiplicity of suits; 2 Story's Eq. Juris., secs. 853, 859; 2 John Ch. R., 281-2. Does not lie till complainants' rights are clear and established at law; 10 Ga. R., 395. Legal title not established in Court of equity; 2 John R., 578; 2 Bro. P. C., 59. Defendants entitled to jury trial at law: 3 John R., 604, 590, 596. As to multiplicity of suits see: R. Code, secs. 3166, 3167, 3173, 3191, 3197; 2 Kelly, 419; 1 Dan. Eq. Pr., 437, 450; Story's Eq., sec. 225; 3 M. & Craig, 85; 2 Bou. Dic., 193. As to rights of lot owners to damages for obstructing streets: Cooly's Con Lim., 544, 553; 9 Ind. R., 433, 467; 12th, 551; 14 Conn. R., 146; 15th, 312; 16 Ind. R., 441; 2 Dutcher, 148; 16 Wisconsin R., 225. As to nuisances: R. Code, secs. 2946, 2947, 2947.

LOCHRANE, Chief Justice.

1. This case comes before the Court upon a bill of exceptions, filed by both the parties, to the judgment of the Court below. The authorities of the city of Augusta entered into a contract with these various roads by which they permitted them the use of a certain street, known as Washington street, in Augusta, to run their cars to carry freight and passengers through that city, along that street. Several of the property owners on the street brought suits at common law for dam-

ages against the railroad companies. This bill was filed by the companies in the nature of a bill of peace, to bring all the parties into a Court of equity, and prays an injunction against them on the ground that they had no right of action, this permission having been first granted by the municipal authorities of the city, and afterwards ratified by the Legislature of the State; alleging that they were in the exercise of their legal rights, and such rights were not the subject-matter of a suit for damages, inasmuch as the Act of the Legislature ratifying the act of the authorities of the city of Augusta, in giving the railroads the right to this street, contained no provision for the assessment of damages for compensation. The Court maintained the bill and refused to dismiss it for want of equity, holding that it was in the nature of a bill of peace, and he could maintain jurisdiction in it.

The railroads excepted to his decision on the ground that he held a right of action accrued to those parties. The others excepted on the ground that he had fettered their legal rights with this illegal condition he had imposed upon them.

We hold, from the facts disclosed by this record, that equity may take jurisdiction, by bill in the nature of a bill of peace, under section 3166 of the Code, and bring all the parties, plaintiffs and defendants, into the forum, and adjust their several rights by one decretal verdict; and the inquiry upon the trial of such case will not only cover past, but future damages, so as to estop all further or future litigation in or about the same subject-matter, and operate, upon compliance with such verdict, as a complete investiture of the legal rights, free from further claim of damage against the railroads in their use of Washington street, Augusta, for railroad purposes, within the legitimate scope of the legislative right granted to them.

2. The controlling question made by this record, and upon which all others hinge, is, whether the railroad companies are liable for damages to the holders of property along Washing-

ton street, in the city of Augusta, by the use of the street by them for railroad purposes. This question is one of vital importance in its consequences, and in the adjudication of the principles involved in it. The previous decisions of this Court upon questions arising under the use of the street, by these railroad companies, relieves the question of many auxilliary subjects, and leaves it to be decided upon broad principles of law. The fee to the street in question is conceded to be in the State. That the city authorities of Augusta and the Legislature have granted this right to the railroad companies is equally admitted. That, by reason of such legislation, such use of the street is not a public nuisance has been determined by this Court. That the action of the Legislature makes no provision for compensation or assessment for damages, is a fact unquestioned.

And the case, therefore, presents itself upon a naked legal principle as to whatever the use of a public street in an incorporated city can be granted to railroads to run their cars over by steam power by the municipal authorities, and, when ratified by the Legislature, will such municipal and legislative permission prevent suits for damages against such roads by property holders abutting on said street.

And *is the silence* of such legislative act in regard to compensation a denial of the right to claim damages at common law? The argument concedes that suit may be instituted for damages by the lot owners, if the use of the street by the railroads denies to such owners free ingress to and egress from their property over and upon such streets. But, it is contended with great ability, and upon a large array of authority, that, in the absence of all statutory provisions to that effect, no case, and certainly no principle, seems to justify the subjecting any person, natural or artificial, in the prudent pursuit of his own lawful business, to the payment of consequential damages to other persons in their property or business : Redfield on Railways, 291. And, in support of this proposition, cases are relied on decided by this Court : 28 *Georgia Re-*

The South Carolina Railroad Co. *et al. vs.* Steiner *et al.*

*ports,* 418, and 34 *Georgia Reports,* 327.   The basis of these recognized principles is, that where *property* of the individual is not taken for the public use, the injury resulting from the legitimate exercise of a lawful employment, working injury, is *damnum absque injuria.*

If the property were taken, the right to compensation cannot be denied, for it is constitutionally guaranteed, and the Legislature limited in that respect.   A very delicate question arises upon construction, as to whether there can be a taking within the constitutional inhibition of rights and easements, which are a part of the necessary use, to the full enjoyment of the property, without compensation.   If the track lay upon an inch of ground belonging to another, it is so sacredly guarded that no power, State or national, could appropriate it.   And yet, by the admission of the principle contended for, a man may be driven from his home and household gods.   Trains, freighted and driven by steam, with gusts of thick smoke through his windows, and screaming along in front of his door, may affect his health and destroy his peaceful enjoyment of his property, and he is remediless.   Are not these equivalent, in the construction of law, to a taking?   Cooley, in his Constitutional Limitations, a work of great ability, and entitled, from its thorough analyzation of all the subjects upon which it treats, to great consideration, says: "Any injury to the property of an individual, which deprives the owner of the ordinary use of it, is equivalent to a taking, and entitles him to compensation:" C. C. L., 554; 14 Coms., 146.   But the idea suggested is, that the Legislature must have provided for the compensation, fixed a rule of damages or mode of ascertainment.   And, again, while the grant of the right by the Legislature prevents the act done from being regarded a nuisance, we are of opinion it is not a logical or legal consequence of such grant, that it may not inflict injury or damage.   The admission of the one is not the necessary exclusion of the other.   And we, therefore arrive at the conclusion that, when the State grants at

right, the use of which works an injury to another, and the law provides no mode of assessing compensation for such an injury, the right of suit for damages, if any can be proven, as we will hereafter discuss, is not taken away by such law.

3. Now, by contract, purchasers of property on Washington street acquired, by ownership, a right to the free use of it for all purposes, and it makes no difference where the fee to the highway resided. The use is the subject-matter of disturbance. It will not be doubted that a public street is for the use of the public, and all obstructions thereon are trespasses in law. And in these days of progressive improvements, we admit the legality for public use of such streets, by laying an iron bar upon them, to facilitate conveyance, by permitting cars to run over them. The enlightened opinion of the world recognizes this appropriate use; and we indorse the authorities of Judges and publicists on this subject. We need not pause to notice the growing tendency of Courts to shield corporations from all prejudiced assaults through the forms of law. Monopolies are evidences of civilization, and invoke no captious criticism at my hands.

But, after a careful review of the authorities presented, I am not satisfied that the use of a public street in a city by steam power, is within the legitimate use of such street. I think the streets may be used, and bars laid upon them, and cars drawn over them by *horses;* but there is something in a *locomotive power*, in throwing smoke into the houses along the street, its tremendous weight shaking the houses and breaking plastering and walls; and in the noise and screeching of whistles, which, in the machinery employed, may make it the subject-matter of injury, which the horse-car, slowly driving along, would not occasion. It is not in the use of the street for cars, but in the mode of use. And, as an original proposition, I gravely doubt the right of any power to take a street, dedicated to public use for the citizens, and convert it into a railroad track, without the consent of the property holders thereon, where it comes as an obstacle

to a great thoroughfare, and the law provides (no) compensation.    The right of eminent domain may be exercised over houses or streets, but the Legislature of Georgia, in the grant of charters, never contemplated arbitrary going through towns upon the part of railroads.

Nor can it be said that the citizen who buys property with knowledge, and by right, cannot complain of the use of the street upon which it lies for any public purpose, if, by such knowledge, he is to be held as understanding the power to make a railroad track of the street is contemplated.    Such is not ordinary; and when it is done by the Legislature, I am of opinion he has the right of suit left; that he is not shorn of his right to complain and present his case to the Court and country.

But, on the trial, the most difficult question still remains to be disposed of—as to what elements of damage may be given in evidence.

From the view I entertain on the subject, I am satisfied that the rule ought to embrace the actual damage sustained from obstruction to the free ingress and egress, and access over and upon the streets.    Inasmuch as the law has allowed the use of the streets by steam-cars, the passage over the street would not be, in itself, an obstruction, while reasonably exercised.    And the laying of the iron upon the street, though it may create a jolt in crossing, would not be an element of damage; for it lies there by direction of the law. Nor would the apprehension of safety to children going out upon the street, nor the possibility of sickness in families, or any fanciful or speculative disturbance constitute an element. The damage which the law recognizes must be actual, something tangible and determinable; and to arrive at this the occupation of the parties by which losses in scholars, or in trade, or the like, have been occasioned, would not be legitimate; but the actual depreciation of the value of property would be proper, and this depreciation, not only from questions of access upon the street, but the noise, smoke, shaking

of walls or plastering, and the like, which can be traced as effect to cause. In cases of this kind damages are not given for *feelings* of *parties*, or the fact that carriages might be injured by runaway horses, or that visitors are prevented from coming to the house, but must rest upon some solid, tangible injury; all consideration of sentimental injuries must be kept away in evidence and in argument from the jury.

We, therefore, affirm the judgment of the Court below, so far as he held jurisdiction in equity over the parties and subject-matter and enjoined the suit at law, reversing the condition required to be filed in writing, and give direction to the trial covering all the equities and rights of parties, and settling by one verdict and apportioning the damages found, if any, among the various roads, and the past and prospective claims of damage to be settled, and the roads have, from compliance with such verdict, future indemnity.

Judgment affirmed, except as to the condition therein stated; as to that, reversed.

Warner, Judge, concurring.

The respective railroad companies, with the consent of the corporate authorities of the city of Augusta, and under the provisions of the Acts of the General Assembly, have the right to run their respective railroad trains by steam power over their track in Washington street, without being liable as trespassers for so doing, and without being liable to have their running trains over and along said street *abated* as a public nuisance, because they have the *license* of the General Assembly of the State and the city authorities to do so. But the injury and damage done to the owners of property on that street by the running of the trains of the respective railroad companies is another and distinct question. What are the legal rights of the owners of lands and tenements on Washington street? The owners of lands and tenements on Washington street are entitled to have and enjoy all the rights and privileges which legally appertain thereto, *incor-*

*poreal* as well as corporeal; for when the law doth give anything to one, it giveth *impliedly* whatsoever is *necessary for enjoying the same.* If the railroad companies, by permission of the public authorities, have located their road on the public street of the city, and by the use thereof, in running their trains, have *invaded any of the legal rights* of the owners of the lands and tenements on that street by hindering, obstructing or disturbing them in the regular use and lawful enjoyment of the same, then the owners of such lands and tenements are entitled to recover such damages as they have *actually* sustained by such invasion of their legal rights to the enjoyment of their property, although the railroad companies may not have located their road on any part of it. The invading, hindering, obstructing or disturbing them in the regular use and lawful enjoyment of their property is an interference with their private legal rights to that property, and, to that extent, is the taking of private property for the public use, for which just compensation should be made; not imaginary, speculative compensation, but compensation for the *actual damage* sustained by the *invasion* of their private legal rights to the use and enjoyment of their private property, resulting from the location and use of the railroad by the respective companies for the benefit of the public. If the General Assembly, in the exercise of its right of eminent domain, should pass an Act for the taking of private property for public use without providing any just compensation therefor, the Act would be unconstitutinal, in violation of the fundamental principles of the law as the same has existed from *Magna Charta* to the present time. When no provision is made in the Act of the General Assembly for compensation, as in this case, the owner of the private property whose legal rights are invaded may pursue his legal remedy to obtain redress, he may stand upon *all his legal rights* as secured to him by the fundamental laws of the land. *Young vs. McKenzie, Harrison et al.,* 3 Kelly, 45; Code, 2962.

It will not do to say that, because the City Council of Augusta granted *permission* to the railroad companies to locate their road on a public street in that city, which was ratified and confirmed by the General Assembly, that, therefore, it was not intended that the owners of private property on that street should receive compensation for the damage done to their private property by the use of that road in running trains thereon for the benefit of the public. Such gross injustice and violation of the fundamental law of the State cannot be imputed to the Legislature, the more especially as there is nothing in the Act from which any such intention can reasonably be inferred. Do these Acts of the City Council of Augusta and of the General Assembly, either separately or all combined together, deprive the owners of the lands and tenements on Washington street of their common law right to sue for and recover damages *actually sustained* for the invasion or disturbance of the use and enjoyment of their private property on that street for the benefit of the public ?

In my judgment, they do not. A Court of equity, in this State, has jurisdiction to entertain a bill to avoid a multiplicity of suits in favor of or against several persons for the establishment of a right subject to legal controversy. The allegations in the complainant's bill make a proper case for the exercise of the equitable jurisdiction of the Court.

McCAY, Judge, dissenting.

It seems to me that there is some confusion in the line of argument pursued by the defendant in error in this case. Nobody will deny that private property cannot be taken by a railroad company, for its use, without compensation. That is not the question. If the plaintiffs in these cases own the land over which this road runs, they are very clearly entitled to compensation for its occupation, if they have never got it. But, whilst it may be admitted that, *prima facie,* the owners of the land on each side of a public highway are the owners

of the soil of the road, each to the centre, yet it would be absurd to say that this may not be shown, by proof, not to be true. The presumption is based upon the known history of the laying out of highways, to-wit: That, ordinarily, the public, by virtue of its right of eminent domain, takes possession of the land of citizens, and appropriates it, under the law, after due compensation, to public uses. But this is not always true. The public may own the whole land, as is usually the case in our country towns, and may sell lots, reserving the streets to its use. Surely it cannot be said that one whose land is described by meets and bounds, and acres and purches, gets any more than is covered by his deed. And just that is the case, as to the city of Augusta, and as to Washington street. The land belonged to the State. The street was laid out by the public, the lots sold by meets and bounds, by acres and purches, to those who desired to purchase.

It cannot, therefore, be said that there is, here, any taking of private property for public use. The *property* taken already belongs, and always has belonged, to the public. The real and only question here is, has the public the right to use a street, the property, the fee of which is, in itself, but which has been dedicated to the use of the citizens, as a street, for the purpose of running a railroad through it. In other words, did the public, by dedicating this land to public use, as a street, *contract* with anybody that it should not be used for the purposes it is now used? So far as the public in general are concerned, that public are represented by the public authorities, and they having consented to this use of it, are not complaining.

At last, therefore, the question is as to the rights of the lot owners. When they bought their lots on this street from the public, what right did they acquire *in the street?* In my judgment, they got a right to free egress and ingress, so far, and so far only, as was consistent with the legitimate use of the street by the public, for the purposes of a street.

Clearly, they did not get the right to a quiet *street*, to a street in which there should be no dust, nor rattling of vehicles, nor jostling of crowds. Every man buying and building on a street buys and builds with the understanding that the street may become a noisy, dusty, thronged and busy thoroughfare. The public, which owns the street and sells the land, very clearly, only contracts that the street shall be kept open for egress and ingress *as a street*, with the right, on the part of the public, to use it for any legitimate use to which a street may be subjected. The holders of the lots have this property right in the street, and that is all. It is a private right in each lot owner, and he has a private right of action for its infringement.

Is the use of steam to draw cars over this road a violation of this right? It is admitted that the right of egress and ingress is not interfered with. Indeed, it appears that the street may be crossed much more easily than before. Nor is there any more obstruction to passing up and down than there would be if the work now done by steam were done by waggons, probably nothing like so much. It seems absurd to me to say that a purchaser of a lot on a public street has his rights infringed by the passage of a steam car through the streets. I know of no single evil that comes to him that does not come every day in a greater or less degree to every man in the community since the introduction of steam. Is he interfered with by noise? Does not this shrieking passenger go screaming through every part of the land every night? Are horses frightened? Children put in danger? Sick-beds disturbed? Is not this true everywhere? It is intensified, it is true by close proximity, but that does not change the right.

These are all public evils, common to everybody. The public agrees to bear them, for the good which comes from the use of steam. As I have said, no man has a private right in quiet street, or a deserted and grassy street.

That foot-passengers or quiet carriages shall give way to

The South Carolina Railroad Co. *et al. vs.* Steiner *et al.*

drays and heavy wagons and coarse, rough people; that it shall be paved and be turned from a quiet muddy street to a noisy dry one; that it shall be difficult to cross, or to go up and down on it, because it is passed over by so many people with so much traffic, all these are contingencies which every man takes who builds on a street. He has no right of action for any of them, not because they are *damnum absque injuria,* but because he has no right to be infringed. He has no contract, either express or implied, with anybody to the contrary. What kind of vehicles shall pass over the public streets, whether wheel-barrows, sedan-chairs, carriages, drays, cars or engines, it is for the public to say. If the right of egress and ingress is preserved to the owners of lots, the use of the street for passing is the right of the public.

As a matter of course, I recognize the right to sue for any injury to the property. If a good, sound wall is broken down, if plastering that would have stood the jar of drays over a stony street is shattered by these heavy trains, if actual damage comes to the property, that is another thing.

People, however, who build on a public street, must lookout that they do not put up such flimsy structures that they will be damaged by the use of the street by such vehicles as the public authorities may, in their wisdom, consent to be used for passing over it.