Semble, that where the entry is made under statutory authority the remedy by statute is exclusive.
There was judgment for defendant, and plaintiff appealed.
The plaintiff is the owner of a lot abutting upon one of the streets of the city of Winston, and brings this action to recover damages for various injuries to her said property, inflicted by the defendant by reason of its having entered upon and constructed its railroad through the said street.
It appears from the complaint that, prior to the plaintiff's (612) purchase of the property in 1879, the street had been "located and opened for the use and benefit of plaintiff and others, and the public generally, who owned property north of Liberty Street, which was almost inaccessible by or over any other street." It also appears that in the construction of its road the defendant made an excavation in front of said property 223 feet in length, and thirty-five or forty feet in depth and width, and thereby reduced the width of the street from thirty to eighteen feet. It is further alleged that by "reason of the nature of the soil and the proximity of the cuts, travel along the said street is rendered dangerous, and that, in order to sustain the width of the same fifteen to eighteen feet, the defendant has put in pillars or posts to hold and retain the earth composing the street in position, which plaintiff alleges is insecure and unsafe and liable to destroy and render useless the said street." It is furthermore alleged that by reason of such excavation and occupation by the defendant, the street, at certain points along the line of plaintiff's property, is almost entirely destroyed, and that plaintiff is greatly endamaged. These allegations extracted from the complaint, must, for the purposes of the appeal, be taken as true, as no evidence seems to have been introduced on the trial, and his Honor rejected the issue as to the alleged damages sustained by the plaintiff, on *Page 446 
the ground that the defendant "had a license from the city to construct its road and use the street, if necessary."
The questions presented, therefore, are whether, as against the abutting owner, the city can authorize the use of its streets for the purposes of an ordinary steam railroad, and whether such abutting owner has any proprietary rights for the violation of which she can maintain an action.
It does not appear how the city acquired its title to the street in question, nor do we learn from the record whether it owns the fee in the soil, or simply an easement therein. In the absence of evidence, (613) however, the presumption is that the city has an easement only, and that the fee remains in the abutting proprietor. Elliott Kent. Com., 432. In such a case "the abutting owner is entitled to every right and advantage in that part of the street of which he owns the fee, not required by the public. The easement of the public is the right to use and improve the street for the purposes of a highway only." Lewis Eminent Domain, 113. It must follow, therefore, that if the city perverts the streets to illegitimate purposes it is an interference with the proprietary rights of the abutter, and that he is entitled to relief at the hands of the courts.
This introduces us to the very important question, never before passed upon by this tribunal, whether or not the use of a steam railroad is a perversion of the street from its original and proper public purposes. There has been much discussion and not a little conflict of judicial decision upon this subject, but it is believed that the weight of authority greatly preponderates in favor of the affirmative view of the proposition.Judge Dillon, after a careful investigation, states his conclusion as follows: "The weight of judicial authority undoubtedly is that where the public have only an easement in the streets, and the fee is retained by the adjacent owner, the Legislature cannot, under the constitutional guarantee of private property, authorize an ordinary steam railroad to be constructed thereon, against the will of the adjoining owner, without compensation to him. In other words, such a railway as usually constructed and operated is an additional servitude." 2 Dillon Mun. Corp., 725. In Mills Eminent Domain (section 204) the same doctrine is laid down, and it is said: "The Legislature may authorize the use of a street by the railroad, so as to make the entry lawful, but the use is an additional burden, and the right will not become fixed in the company until compensation is made. If no remedy is provided, there is (614) remaining the remedy at common law."
In Lewis Eminent Domain (section 111) the able and discriminating author remarks: "To us it seems so clear that a railroad is foreign to the legitimate uses of a highway that we never have been able *Page 447 
to understand how a court could reach a contrary conclusion." After stating that highways have from time immemorial been devoted to the common use of every citizen, and that no one had a private right or any exclusive privilege therein, the author proceeds: "The railroad does not fall within the scope of such uses. It requires a permanent structure in the street, the use of which is private and exclusive. It gives to an individual or corporation a franchise and easement in the street inconsistent with the public right. To hold that a railroad is one of the proper and legitimate uses of a street leads to the absurd consequence that a street might be filled with parallel tracks, which would practically exclude all ordinary travel and still be devoted to the ordinary uses of a highway. The law ought not to tolerate such a consequence."
In Elliott Roads and Streets (528) the author cites many authorities and concludes by saying that the weight of authority is that such an appropriation of a street is "a new and additional burden, for which the abutter is entitled to compensation."
In support of his proposition he quotes the following language ofJudge Cooley: "Neither can the use of the highway for the ordinary railway be in furtherance of the purpose for which the highway is established, and a relief to the local business and travel upon it. The two uses, on the other hand, come seriously in conflict. The railroad constitutes a perpetual embarrassment to the ordinary use, which is greater or less in proportion to the business that is done upon it and the frequency of trains. When, therefore, the country highway or the city street is taken for the purposes of a railroad company engaged (615) in the business of transporting persons and property between distant points, the owner of the soil in the highway is entitled to compensation, because a new burden has been imposed upon his estate, which affects him differently from the original easement, and may be specially injurious." Constitutional Lim., 3 Ed., 683.
In Hare's Ann. Const. Law, 361, the foregoing doctrine is fully approved, and it is said: "It is immaterial as regards the principle whether the land is given voluntarily or taken under the right of eminent domain. If the owner dedicates the land, it is for the continuing uses of a street. If it is condemned, such also is the end in view. To convert a common highway over a man's land into a railroad is therefore to impose an additional burden upon the land, which greatly impairs its value, considered as a whole, and if the owner is not compensated his consent must be proved. It cannot be said with truth that, in assenting to the laying out of the highway upon his land, he consented to the building of a railroad upon it, because they are essentially different. The one benefits his land, renders access to it easy, and enhances the *Page 448 
price, while the other makes access to it difficult and dangerous, and renders it comparatively valueless. Nor can it be justly contended that a railway is merely an improved highway.... Where the transaction between individuals, every one would see the injustice of such a conclusion. The doubt arises from the supposition that the public interest is involved, and it was to guard against the bias arising from this source that the Constitution interfered to protect the citizen. It follows that the dedication of land as a street does not preclude the owner from bringing trespass of ejectment or obtaining an injunction against a railway company which is about to enter upon and occupy the way, and that the company cannot (in the absence of the exercise of the right of eminent domain) rely upon a grant from the Legislature and the license or consent of the municipality as a justification."
(616) Booth, in his work on Street Railways, sec. 78, after stating that, in the early history of commercial railroads, the current of authority was contrary to the views above stated, remarks: "But, according to the weight of judicial opinion, as expressed during the last thirty years, where the fee of the street remains in the adjoining owner, such use is inconsistent with the purposes of the original acquisition, and, without compensation, can only be acquired by the exercise of the power of eminent domain."
In the discussion of the question, we have preferred to reproduce the conclusions of eminent text-writers rather than attempt a review of the numerous decisions upon which they are founded. These decisions, and others we could cite, fully establish, upon principle and by weight of authority, the proposition that, where the public have only an easement in the street, and the fee of the soil of the street is retained in the abutting owner, a steam railroad cannot, under the constitutional guaranty of private property, be lawfully constructed and operated thereon against his will and without compensation. R. R. v. Heisel, 47 Mich. 393; R. R. v. Reed,41 Cal. 256; Imlay v. R. R., 26 Conn. 249; R. R. v. Steiner, 44 Ga. 546;Daly v. R. R., 80 Ga. 793; Cox v. R. R., 48 Ind. 178; Kercheman v. R. R.,46 Iowa 366; R. R. v. Hartly, 67 Ill. 439; Phipps v. R. R., 66 Md. 319;Springfield v. R. R., 4. Cush., 63; Harrington v. R. R., 17 Minn. 215; R.R. v. Ingalls, 15 Neb. 123; Chamberlain v. Cordage Co., 41 N.J. Eq., 43;R. R. v. Williams, 35 Ohio State, 168; Ford v. R. R., 14 Wis. 609; Carl v.R. R., 46 Wis. 625; Buckner v. R. R., 60 Wis. 264; R. R. v. McAhren,12 Ind. 552; Theobold v. R. R., 66 Miss. 279; Barney v. Keokuk,94 U.S. 324; Adams v. R. R., 39 Minn. 286.
(617) The principle, then, being established that the use of a street for steam railroads is not a legitimate use of the street for public purpose, it must of course follow that the city had no right, in the *Page 449 
exercise of its usual and ordinary powers relating to its highways, to authorize the entry and occupation of the same by the defendant, and that the bare license of the city can afford no justification for the infringement of the rights of the plaintiff. The plaintiff, therefore, taking her allegations to be true as to the damage inflicted upon her property, very plainly has a cause of action against the defendant.
If, however, we are wrong in the assumption that the plaintiff is the owner of the fee in the said street, and if it should appear upon another trial that the city has acquired it, either by dedication, grant or condemnation, it will be necessary to determine whether the plaintiff has an easement in said street to the extent that it shall be used only for street purposes, and whether her rights are "property rights" which cannot be impaired or destroyed except under the exercise of the right of eminent domain.
Distinctions based upon the legal ownership of the fee in respect to the rights of the abutting proprietor, have produced much confusion, resulting in many conflicting decisions, but the true principle which has been slowly, but surely, evolved from protracted discussion and experience, is that, in respect to the use of the soil for the purpose of a street (and apart from those reversionary or other rights peculiar to legal ownership), it is wholly immaterial where the legal title resides. The very power to take private property for public use, as well as the capacity of a municipal corporation to acquire it in any way, necessarily implies that it is to be held in trust for public purposes, and in the case of land acquired for the purposes of a street, there is something in the case nature of a contract, under which two coexistent and inviolable rights are created, one belonging to the public to use and improve the street for the ordinary purposes of a street, the other, to the (618) abutting owner to have access to and from his property, and to enjoy such use of the street as is customary and reasonable. If the owner voluntarily dedicates or grants a strip of land to a city for a street, it must be presumed that he does so in consideration of the contemplated benefits accruing to his adjoining property by reason of the strip being used for the legitimate purposes of a street only. If the grant be made upon a pecuniary consideration, it is also fair to assume that, in estimating the amount to be paid, the value of the benefits above mentioned were likewise considered. In such cases, says Mr. Lewis, sec. 114: "To make the right a part consideration of the grant, and then allow the public to invade or destroy it at pleasure, would be a fraud which the law will neither impute or allow. Therefore, in the case of such a grant there arises by operation of law a private right to the use of the street in connection with the lot of the proprietor, which is as inviolable as any other right of property." So if the city acquired the land by condemnation, *Page 450 
such advantages or benefits to the adjoining land are usually assessed at a fixed value and deducted from the estimated damages, and it would, says the above author, be "the grossest iniquity to compel a man to pay for advantages, whether in the form of deductions from the price to be paid or of an assessment of benefits, unless those advantages are secured to him by a clear title. . . . The existence of these private rights and easements is strictly independent of the mode in which the highway is established, or of the estate or interest which the public acquires in the soil of the street."
The true principles applicable to this question have been declared by the Court of Appeals of New York, in Story v. R. R., 90 N.Y. 122, andLahr v. R. R., 104 N.Y. 268. These cases have been followed by subsequent decisions of other States, and their doctrine has been approved by the most prominent writers upon the subject. The opinions (619) are very elaborate, and we cannot do better than to adopt Judge Dillon's summary of some of the principles enunciated:
"These judgments, and those that follow them, rest upon the foundation principle that whether the fee in the street is in the abutter, subject to the rights of the public, that is, to the paramount rights of the public for street uses proper, or whether the fee is in the public for street uses proper, in either case, and generally in both cases, the abutter is entitled to the benefit of the street for all uses except street uses proper, subject, of course, to legislative and municipal regulations, and that such rights are property or property rights in the abutter, which can only be taken away by the Legislature on the condition of making compensation. And the butting owner's rights in the street are not affected by the source from which he derives his title.... If the abutter owns the fee of the street, his rights may be said to be legal in their nature. If he does not own the fee, those rights are in the nature of equitable easements in fee, the soil of the street being the servient, the abutting owner's lot being the dominant tenement. Among the most important of such rights or easements is the abutter's right to access, to light and to air. The court accordingly held that, so far as the elevated railway structures interfered with such rights or easements, while the Legislature might authorize their erection and use, yet this could only be done as respects the abutter by the exercise of the right of eminent domain, viz., on condition of making compensation to the abutting owner for the damage which his property actually sustained."
"The result of the author's reflections upon this subject is that the views of the court of appeals are sound and just; sound, because they recognize the paramount nature of the public right to put the street to this new and necessary from of public use; just, because they recognize and declare that the abutter has special proprietary rights or *Page 451 
easements in their nature, he is not called upon unequally to (620) sacrifice without compensation for the public use. In effect, the court says the true doctrine is `take but pay.'" 1 Hare, supra, 370, 375; Lewis on Eminent Domain, secs. 114, 115; Booth on Street Railways, sec. 81; Barney v. Keokuk, supra; R. R. v. Schurmer, 7 Wall., 372; 1 Rorer Railroads, 524; Story v. R. R., supra; Hanes v. Thomas,7 Ind., 38; R. R. v. Steiner, 44 Ga. 546; Theobold v. R. R., supra.
The contrary view, laid down in 2 Wood's Railway Law, 727, seems to be based upon the restricted interpretation of the word "taken," it being applied by some of the courts only to property actually taken and occupied, and all incidental damages to adjoining proprietors are regarded as "consequential" in their character and damnum absque injuria. The learned author admits that such would not be the case if the words used were "taken or damaged," but by a reference to the opinion in Staton v. R. R.,111 N.C. 278, it will appear from the cases cited that this restricted meaning of the word "taken" is not in accord with the more recent and better authorities, and is being rapidly submerged by the steady and increasing current of judicial decision. Lewis, supra, 58; Pumpelly v.Greenbay, 13 Wall., 166; Eaton v. R. R., 51 N. H., 504.
The result of the numerous authorities is that in either view of the case, that is, whether the fee is in the plaintiff or in the city, the plaintiff has certain proprietary rights, of which she cannot be deprived, even under the authority of the Legislature, without compensation. If her property is in any way injured by the use of the street for legitimate purposes, she cannot complain. But if the enjoyment of her private rights in the street is interrupted by a perversion of the street to uses for which it was not intended, and which the public right does not justify, and her property is thereby injured and its value impaired, she may maintain an action and recover such damages as she may (621) have sustained. These proprietary rights in the use of the street for proper public purposes are practically, as we have seen, the same irrespective of the ownership of the soil, and are not confined to the mere right of access, since this may not be disturbed, although the street may be reduced in width to ten or fifteen feet. This view is well sustained in the leading case of Adams v. R. R. (Minn.), 1 L.R.A., 493, in which the court said: "Take a case in one of the States where the fee of the street is in the State or municipality, and of a street sixty feet wide. The abutting lot owners have paid for the advantages of the street on the basis of that width, either in the enhanced price paid for their lots, or, if the street was established by condemnation, in the taxes they paid for the land taken. In such a case, if the State or municipality should *Page 452 
attempt to cut the street down to the width of ten or fifteen feet, would it be an answer to objection by lot owners that the diminished width would be sufficient for mere purposes of access to their lots? It would seem as though the question suggests the answer." The interest of the abutting owner in the entire width of the street, subject to the proper uses of the public, upon the authority of the above decision, has been declared by this Court in Moose v. Carson, 104 N.C. 431, and cannot be regarded as an open question. See also Hanes v. Thomas, supra. If then the value of the property is lessened by reducing the width of the street, or if such damage is caused by excavations rendering it unsafe and dangerous, as stated in the complaint, the plaintiff is entitled to recover.
It will be observed that the defendant did not introduce its charter or show that it had condemned any part of the street or the rights or easement of the abutting proprietor. It justifies its conduct solely upon the mere license of the city of Winston, and in this view of the case its occupation, in so far as it affects the plaintiff, must be regarded (622) as unlawful. If this be so, the plaintiff may maintain a common law action for damages, to be assessed up to the time of the trial, or it seems she may sue for the permanent damage, if any, which has been inflicted upon her property by reason of the location and construction of the defendant's road, and by so doing confer upon the defendant (so far as she is concerned) an easement to occupy the street. Had the defendant entered under some statutory authority, it would be important to consider whether the plaintiff would not be confined to the statutory remedy, but as it does not appear to have entered under any other authoritythan the bare unauthorized license of the city, and as the ruling of the Court is based expressly upon the validity of such license, we must conclude that the plaintiff has a right to maintain the present action, and that the issue as to the damages actually sustained should have been submitted to the jury.
As the facts were not fully developed on the trial, we do not deem it proper to further pursue the discussion.
New trial.
Cited: Liverman v. R. R., 114 N.C. 697; Ridley v. R. R., 118 N.C. 1004;Merrick v. R. R., ib., 1082; S. v. Higgs, 126 N.C. 1022, 1028;Jones v. Comrs., 130 N.C. 469; Phillips v. Telegraph Co., ib., 525;Hodges v. Telegraph Co., 133 N.C. 232; R. R. v. Telegraph Co., 137 N.C. 334;Hester v. Traction Co., 138 N.C. 293; Brown v. Electric Co., ib., 538; Staton v. R. R., 147 N.C. 435, 437; Elizabeth City v. Banks,150 N.C. 413; Butler v. Tobacco Co., 152 N.C. 419; Guano Co. v.Lumber Co., 168 N.C. 340; Lloyd v. Venable, ib., 535; Bennett v. R. R., *Page 453 170 N.C. 393; Kirkpatrick v. Traction Co., ib., 478; Caveness v. R. R.,172 N.C. 310; Powell v. R. R., 178 N.C. 246; Query v. Tel. Co.,178 N.C. 641.