DONNAHER *v.* THE STATE, 8 Smedes & Marshall, 649.

### NUISANCE.

The statute of 1832 reserves to the legislature the right to dispose of the entire two sections of land designated by the commissioners to locate the seat of government, except the streets and lots which may be sold from time to time. This vests the title to the streets in the corporation of the city, and deprives the legislature of the power to dispose of them, except so far as the *jus publicum*, or right of domain may authorize it. This right of domain always exists, unless the state has absolutely parted with it by grant.

There is a necessary exception in the title of all property, that if it be necessary for public use, it may be taken for such purpose, provided that just compensation shall be made to the owner.

The property of a corporation is not less liable to the exercise of the *jus publicum* than the property of a private individual. A corporation is an ideal individual, and is to be treated as other individuals.

Error to Hinds circuit court. COALTER, J.

This was an indictment preferred by the grand jury of Hinds county against Patrick Donnaher for a nuisance, in digging and subverting large quantities of dirt in the streets of Jackson, and thereby obstructing the same. The defendant pleaded not guilty. The case was submitted on the following state of facts, to wit:

In 1836, the legislature passed an act incorporating the president and directors of the Jackson and Brandon Railroad and Bridge Company. The eleventh section of this act is as follows: "Be it further enacted, That the said company shall have the

privilege of extending said road, and of constructing branches in any direction whatever, that they may intersect or unite with any other road terminating in or passing through the town of Jackson; provided the said railroad be so constructed as not to interfere with the passage of any public street of said town. And so much of the land donated to the state by the act of Congress, passed February 20th, 1819, for the seat of government, as may be necessary for the passage of said railroad, and as may be selected by the commissioners, with the consent of the governor of the state, and which yet remains unsold, is hereby donated to said company during the continuance of this charter; provided that not more than one acre shall be donated for the erection of warehouses or a place of depot, and that said acre of said land, shall only be located within two hundred yards of the place where the said road shall pass Pearl river." It was agreed on the trial, that the foregoing act, or any part thereof, or any other act in relation to said railroad, whether mentioned in the case or not, might be read in evidence from the pamphlet acts as printed by the state printers.

By virtue of this and other similar acts the said railroad company claimed the right to extend the railroad from the termination of the Vicksburg and Jackson railroad through the city of Jackson to Brandon, and through the eastern part of the state, to connect with the Charleston railroad. It was further agreed that the land on which the city of Jackson now stands, at and before the laying off of the said city of Jackson, belonged to the State of Mississippi. By another act the city of Jackson was laid off by commissioners, into lots with public streets, etc. A plan of said city was referred to and part of the case on the trial. It was also agreed that all the acts laying off the said city of Jackson, or amending the same, should be considered a part of the case and read in evidence from the statute-book. It was also agreed that the various acts incorporating the city of Jackson, and amending and modifying its charter, may be read in the case from the statute-books. It was further agreed that the lots in the said city of Jackson were sold by authority of the state, according to said plan, and were then held by individuals; that the president and directors of the Jackson and Brandon Railroad

Company laid out the railroad to pass through the city of Jackson to Brandon, from the west side of State street, commencing at a point where the railroad from Vicksburg to Jackson had been completed, to the piers on Pearl river, where the bridge is to be built, which route as laid out passes across State street in the city of Jackson to and across South street, thence part of an acre lot 1, south, into and down Commerce street to the lot on which the saw-mill is situated, whence said route passes through individual property. The right of way has been secured by the company. It was further agreed that Commerce and State streets are each one hundred feet wide, and South street eighty feet wide, through which streets alone the track will run. The track of the road was to be twelve feet wide on the surface, and the rails will be five feet apart. The track when completed to be used by either horse or steam cars. The line of road on Commerce street to be about a quarter of a mile in length, and about one hundred and twenty feet on State street, and about one hundred feet on South street. It was further agreed that the defendant was and continued to be employed by said railroad company to grade the road through the city of Jackson, in pursuance of which contract he was digging and grading on said streets in said city of Jackson, over which said line of road as laid off by said company is to run. It was agreed that the acts of said defendant in digging and grading said streets, constitute a nuisance in law, if said company had no power to run their said road through and over the said streets in said city; but if said company had such power, it was agreed that said acts are necessary to make said road through said streets, and did not constitute a nuisance. It was further agreed that the lots in said city of Jackson situated on said streets were sold by the state to individuals, some of which have been built on and improved; the said individual purchasers purchased with reference to the plan of said city, and with a reference to the use of said streets, etc., in accordance with said plan. In running the road through said streets the value of the property thereon would be lessened to some extent, and the use and enjoyment of said streets would be impaired to some extent, that is to such an extent as railroad trains, propelled either by steam or horse power, passing through

a street, necessarily impair its use. It was further agreed that said streets have not been condemned, or damages assessed against said company for the right of way through them; that the corporate authorities of the city of Jackson never agreed to, but resisted the right and power of the railroad company to use the streets of the city for the railroad. It was further agreed, that if upon the foregoing facts, the court should be of opinion that the said company had the power and right to run said railroad, through said streets of Jackson, then and in that case, judgment should be entered up for the defendant. But if the court be of opinion that said company had no such right, then judgment was to be rendered for the state.

The court was of the opinion that the railroad company had no right to use the streets of the city of Jackson in the manner claimed by them, and rendered judgment against the defendant. To reverse which, he has sued out a writ of error, and brings the case to this court.

*George S. Yerger* for plaintiff in error.

1. The company undoubtedly has the power, delegated from the state, to run their road through Jackson, so as to join the railroad from Vicksburg. See Acts of 1836, 163, 196; Acts of 1838, 82; Acts of 1840, 198; Acts of 1841, 138; Acts of 1842, 123; Acts of 1846, 126. The act incorporating the Southern Railroad Company, gives the Jackson and Brandon Railroad and Bridge Company the power of building and completing their road from where it unites with the Southern railroad at Brandon to a point " *at* or *near* the city of Jackson, and B. R. & B. Co., shall unite with the Vicksburg and Jackson railroad," etc. See § 7, Acts of 1846, 142.

Not merely the local public, but the community at large have a right to use the streets of Jackson, which were dedicated as public streets and highways in any manner not inconsistent with the public use, or contrary to the original purposes for which they were given to the public.

The use of the streets for running railroad cars is precisely in accordance with the uses of a public street or highway. If the streets are not for the sole use of the town but for the public, what right have the local authorities of Jackson to prevent the

public from traveling over them in an improved or different mode of traveling than that which was known at the time of the dedication.

The consent of a municipal corporation to use and appropriate the streets in a way inconsistent with their original use, would not give validity to such use. 8 Dana, 289. Neither the original proprietor nor the city can appropriate or use property dedicated for public use, to a different use.

The use must be consistent with the dedication, and if the streets are permitted to be used in a way inconsistent with the use originally intended, it is clear that any citizen or citizens of the town, or any member of the community can in equity enjoin such use. City of New Orleans v. The United States, 10 Peters, 662; 1 Wharton, 469; 3 Vermont, 279, 519; ib. 378; 2 Greenl. Ev., § 662; 6 Peters, 507. It is settled that property may be dedicated to public use without grant. See cases in 6 and 10 Peters R.

It is clear that the owners of property have no right to damages, for they do not own the soil. Neither has the corporation, for the city only holds the street as a right of way; and if the streets were condemned, the damages would have to be for the use of the original proprietor, the state. 11 Leigh, 42; 6 Peters, 507. And if the use of the streets by running the cars was inconsistent with their original dedication, it follows, that the court, notwithstanding the consent of the corporation, ought to have enjoined such inconsistent use. 8 Dana, 289.

To constitute a nuisance, there must not only be an obstruction of the street, but it must be an unlawful obstruction. It cannot be an unlawful obstruction to grade the streets for the purpose of carrying into effect the right of way given to the public by the original dedication of the streets and by the act of 1846.

*William Yerger* for the state.

The constitution of this state declares, that "No person's property shall be taken or applied to public use without the consent of the legislature, and without compensation being first made therefor."

It has been decided that a charter to a railroad company, au-

thorizing them to pass over lands without the consent of the owner, upon an assessment of damages being made, and a judgment and execution therefor, was unconstitutional. The land must not only be condemned for public uses; but it must be first paid for before it can be used. Thompson v. Grand Gulf Railroad, 3 How., 240.

Wherever the owner of land lays it out in lots, with streets, etc., for the purpose of being used as a town, and sells lots in it with reference to such plan, he cannot afterwards deprive the grantees of the benefits of the streets, etc., so laid out. 4 Paige, 510.

All public dedications are to be considered with reference to the use for which they are made. 6 Peters, 438.

The purchasers of lots in the city of Jackson bought them in reference to the plan of the city then laid out, and have a right to the use of the streets as easements to the full extent of the dimensions of the streets so laid out. 2 Wend., 472.

Under the grant of a thing, whatever is parcel of it or necessary to its beneficial enjoyment or, in common intendment, is included in it, passes to the grantee. 3 Mason, 280.

Wherever the owner of lands in a city sells building lots, bounding them by streets of a specified width, as laid down on a map, but not actually opened, the purchasers acquire a legal right against the grantor to have the streets kept open to the width delineated on the map. 8 Wend., 85.

The state, having laid out the city of Jackson with various streets, squares, etc., and sold lots therein with reference to such plan, cannot by any subsequent legislation appropriate the streets or squares of said city for any other purpose than such as was originally intended, or do any thing which will impair the use and enjoyment of the same by the owners thereof. 6 Peters, 431, 498, 738; 10 ib., 662, *et seq.*; 1 Wend., 268; 2 ib., 475; 8 ib., 95; 11 ib., 493; 17 Mass., 415; 4 Paige, 510; 3 Mason, 280.

CLAYTON, J.:

The agreed state of facts contained in this record, presents this as the prominent question for investigation: whether the

Jackson and Brandon Railroad and Bridge Company have a right to construct a railroad through the streets of the city of Jackson without an assessment and payment of damages for such use of the streets.

The statute incorporating this company, passed February 5th, 1836, gives power to it to extend its railroad so as to intersect or unite with any other railroad terminating in or passing through the city of Jackson, provided the road be so constructed as not to interfere with the passage of any public street of said city. There has been various legislation on the subject of this railroad since, but the above provision has been retained.

The statute of 1823 reserves to the legislature the right to dispose of the entire two sections of land, designated by the commissioners to locate the seat of government, except the streets and the lots which may be sold from time to time. How. & Hutch., 60, § 11; Poin. Rev., 486. This vests the title to the streets in the corporation of the city, and deprives the legislature of the power to dispose of them, except so far as the *jus publicum* or the right of eminent domain may authorize it. This right of eminent domain always exists, unless the state has absolutely parted with it by grant. There is a necessary exception in the title to all property, that if it be wanted for public use, it may be taken for such purpose. But this is always upon the condition that just compensation shall be made to the owner. The principle has its origin in the common law, The King v. Ward, 31 Com. Law R., 96, and is enforced by our constitutional provision, "that private proverty shall not be taken for public use without just compensation." This principle applies as forcibly to the streets in this instance, as to private property in other cases. In the case of The Tuckahoe Canal Company v. The Tuckahoe Railroad Company, 11 Leigh, 76, the court says: "It is not perceived that the property of a corporation is less liable to the exercise of the *jus publicum* than the property of a private individual. In both cases the private right must yield to the necessities of the public, and in both the public must make compensation for the loss. This was a case of opposite franchises or easements."

In a case in 3 Hill's N. Y. Rep., 570, the court says: "The

claim set up is an easement, not a right of passage to the public, but to the company who have the exclusive privilege of using the track of the road in their own peculiar manner. The public may travel with them over the track if they choose to ride in their cars; but nevertheless the company are not the public, nor can they be regarded as standing in the place of the public. They are a private company, an ideal individual, and to be treated as an individual." Presbyterian Society in Waterloo v. Auburn and Rochester Railroad Company. That case arose in an effort to subject a public highway to the use of a railroad.

The progress of public improvement, and the increase of trade and commerce may render changes in roads, streets and canals necessary. An easement of one kind may be made to give place to one of a different character, of more enlarged utility. Great and acknowledged public improvements lead to corresponding changes in the rights to be affected by them, accompanied, however, with the just condition of making compensation.

This case differs from that of the Lexington and Ohio Railroad Company v. Applegate et al, 8 Dana, 289, in two essential particulars. 1st, The corporation there gave its assent to the use of the streets of Louisville by the railroad. 2d, The owners of the lots there claimed compensation. In this case the corporation has not given its assent, and the owners of the lots are not before us. The right to the streets, in this case, being in the corporation of Jackson, they cannot be subjected to the use of the railroad without the consent and contract of the corporation, or without the assessment and payment of damages according to law.

At present we are strongly inclined to the belief that the owners of lots adjacent to the track of the railroad will have no claim to compensation. They have no right of soil in the streets; and the charter of the railroad company restricts the use to such bounds as will not interfere with the passage of the streets. Moreover, the salutary maxim will apply to the company, that "they must so use their own rights as not to injure another." 31 Eng. Com. Law Rep., 97; Dudley's S. Car. R., 138. This point, however, need not be decided. See Barclay v. Howell, 6 Peters, 514.

We have no doubt that the corporation has the power to regulate the mode of propelling the cars within its limits; to say whether steam or horse-power shall be employed; and to prescribe the rate at which they may move. This results from the same principle which authorizes it to control the speed of carriages and of horsemen—the principle of necessary protection to the safety of its citizens and their property.

The defendant having failed in his attempted justification, the judgment is affirmed.

THACHER, J., *dissented:*

Because he believes the company possess the right of way through the streets without any compensation; and because he considers the company has a right to use any species of locomotive power, subject to police regulations, to be established by the corporation of Jackson..