GEO. P. THEOBOLD v. LOUISVILLE, NEW ORLEANS AND TEXAS RAILWAY CO.

1. STREET. *Use by public.*

A street is a highway established for the accommodation of the public in passing from place to place, and for such other incidental uses as are ordinarily made of public thoroughfares, such as laying drains, sewers, gas and water pipes, and the like. For such uses public streets are free to all alike.

2. SAME. *Co-existent right of abutting owner.*

Co-existent with the right of the public to use and improve the street for all ordinary and proper purposes, is the right of the adjacent lotowner to have access to and from his property, and to make such other use of the street as is reasonable and customary.

3. STEAM RAILROAD. *Additional servitude. Damages to owner.*

To construct or operate a steam railroad on a public street is to impose an additional servitude, not within the ordinary purposes of such a highway; and if a street is devoted to such use without condemnation or the consent of an abutting owner, he may recover damages from the railroad company for injuries to his property resulting therefrom.

4. SAME. *Whether public has fee or easement. Constitutional right.*

Whether the public has a mere easement or whether the fee to the street is in the adjacent proprietor, the public, or a third person, the constitutional guaranty of private property applies, and, without compensation being first made, the public cannot lawfully authorize such use of the street by a railroad company against the owner's consent.

5. DISTINCTION BETWEEN HORSE AND STEAM RAILWAYS.

In the use of a public street, in respect to the rights of adjacent owners, a difference is recognized between an ordinary horse railway and a steam railroad; but whether the difference is only one of degree the court is not called upon to decide in this case.

FROM the circuit court of Warren county.

HON. RALPH NORTH, Judge.

This was an action of trespass brought in 1888 against the Louisville, New Orleans and Texas Railway Company by the appellant, Theobold, the owner of a lot of land situated on Levee

street in the city of Vicksburg. The defendant owns and operates a line of railroad extending from Memphis, Tenn., to New Orleans, passing through Vicksburg and over Levee street. The declaration alleges that the defendant in 1883, without any condemnation proceedings and without permission of plaintiff, constructed its track on said street and has since been operating the railroad, to the great damage of plaintiff's property. The plaintiff alleges that his lot extends to the centre of the street, which is a right of way granted to the city for the ordinary uses of a public street; that the occupation by the railroad is not within the use contemplated in the grant or dedication, and imposes an additional burden, for which plaintiff claims that he was entitled to compensation.

A general demurrer was sustained to the declaration, and the suit was dismissed.

The plaintiff appealed.

In justice to the judge of the court below, counsel for the appellant state in their brief that, as there were a number of cases of the character of this pending in the court, by an arrangement of counsel, with the consent of the court, judgment was entered sustaining the demurrer in order to get a test case on appeal, to settle the principles applicable to the several cases.

*Dabney, McCabe & Anderson* and *Jno. N. Bush*, for appellant.

Where a street is dedicated the abutting proprietor owns to the centre, subject to an easement in the public; and subsequent purchasers own to the centre of the street, though their deeds only describe the land as abutting on the street. 3 Kent. Com. (6th ed.), p. 432, note *d;* Dill. Mun. Cor., §§ 633, 663, and notes.

"But the easement of the public does not include the use of a street by a steam railroad, nor by an elevated railroad, even if the city owns the fee in the street." Washb. Eas., p. 252.

Where the public has only an easement in the street, the laying of a railroad track is an additional burden, and abutting owners are entitled to compensation for the new servitude. Dill. Mun. Cor., §§ 703, 716, and note to § 703; *Imlay* v. *R. R. Co.*, 68 Am. Dec. 392, and note; *Williams* v. *R. R. Co.*, 69 Am. Dec. 651 and note.

Although the fee of the street is in the abutting owner, a municipal corporation may grant the right to a railroad company to lay its track in the street; but the company is liable to the owners for injuries resulting to his property. *R. R. Co.* v. *Hartley*, 67 Ill. 439 (s. c. 16 Am. R. 624).

In such cases neither the legislature nor the municipal authorities have power to dispense with making compensation. 80 Am. Dec. 791 and notes; 40 Wis. 652.

It is immaterial whether the fee is in the public or in the adjacent landowner, or in a third person. *Barney* v. *Keokuk*, 94 U. S. 324. See also *R. R. Co.* v. *Schurmeir*, 7 Wall. 272.

Lotowners have a peculiar interest in the adjacent street, a franchise, the right to which is as inviolable as the property in the lots themselves. Dill. Mun. Cor., § 712 and note. See also *Chicago* v. *Taylor*, 125 U. S. 161; Cooley's Const. Lim., p. 549; Ib., p. 545 *et seq.*, and numerous authorities there cited. Const. Miss., art. i, §§ 2, 10.

While there is some conflict, the great weight of authority supports the right to recover of railroad companies where their tracks are laid in the public streets.

We ask the court to settle all the questions that are presented, including those applicable to cases in which the public owns the fee in the street as well as those in which only an easement is granted.

*Murray F. Smith,* for appellee.

The question presented in this case has never been adjudicated in this state. The nearest approach to a decision is *Dannaher* v. *The State*, 8 S. & M. 661. What is said there is obiter, but indicates that lotowners in a case like this have no right of action.

The weight of authority seems to be that the lotowner has a right of action, as I am fully aware, but I contend that these decisions are not based upon sound reasoning. To hold now, when thousands of streets are occupied by railroads, when there is scarcely a city or even a town of importance in this country without railroads on its streets, is to hold that the owner of land in platting his

property and dividing it into lots and streets is not presumed to expect that at some day a railroad may be constructed on one or more of these streets. If the owner is not presumed to dedicate the streets for any such purpose, then we are to conclude that all towns are laid off with a view to having communication with the balance of the world by the old methods of travel and transportation only.

Mr. Dillon in his work on Municipal Corporations (§ 725), while stating that the weight of authority supports the view that would give a right of action in this case, says it deserves further consideration whether the power of the legislature over the uses to which highways may be put is really subject to this supposed constitutional limitation. And he adds : " Although the decisions as to the power of the legislature in such cases to authorize street railways without compensation to the adjoining freeholder are conflicting, it is believed that such railways, as ordinarily constructed and used, do not create a new burden upon the land, and hence the legislature is not bound to, although it may, provide compensation to the adjacent proprietor."

Pierce, in his work on Railroads (p. 234), adopts the view that a railway on a highway is not necessarily a different use, and, therefore, that the abutting owner has no right of action.

The supreme court of the United States, in *Barney* v. *Keokuk*, 94 U. S. 340, says that a street, " may be occupied by those important iron ways for public passage which modern skill has provided and which the advance of general improvement requires." After commenting on horse railroads, the court then uses this language : " So other railways coming to cities add greatly to their wealth and population and furnish greatly increased facilities of communication with other portions of the country."

In the case of *Philadelphia* v. *R. R. Co.*, 6 Wharton 25 (s. c. 36 Am. Dec. 202), the court uses this language : " Even agreeing that this grant extends to the middle of the street, the public has a right of way over it. Neither the part used for the street nor the part occupied by himself is taken from him ; and, as it was dedicated to public use without restriction, he is not within the

constitutional prohibition, which extends not to matters of mere
annoyance.   The injury of which he can complain is not direct,
but consequential.   It consists either in an obstruction of his right
of passage, which is personal, or in a depreciation of his property
by decreasing the enjoyment of it; but no part of it is taken from
him and acquired by the company."

In the case of *Macomber* v. *Nichols*, 34 Mich. 212. (s. c. 22
Am. R. 522), Judge Cooley, in delivering the opinion of the court,
says: " When the highway is not restricted in its dedication to
some particular mode of use, it is open to all suitable methods;
and it cannot be assumed that its use will be the same from age to
age, or that new means of making the way useful must be excluded,
merely because their introduction may tend to the inconvenience or
even the injury of those who may continue to use the road after
the same manner as formerly.   A highway established for the gen-
eral benefit of passage and traffic must admit of new methods
whenever it is found that the general benefit requires them; and
if the law should preclude the adaptation of the use to the new
methods, it would defeat, in greater or less degree, the purposes
for which highways are established.   *   *   *   The law cannot
define what exclusive means of transportation and passage shall
be used.   Universal experience shows that this can best be left to
the determination of the municipal authorities, who are supposed
to be best acquainted with the wants and necessities of the citizens
generally.   To say that a new mode of passage shall be banished
from the streets, no matter how much the general good may re-
quire it, simply because streets were not so used in the days of
Blackstone, would hardly comport with the advancement and en-
lightenment of the present age."   See also *Moses* v. *R. R. Co.*, 21
Ill. 522; *R. R. Co.* v. *Newark*, 2 Stockton (N. J.) 352; *Attorney-
General* v. *R. R. Co.*, 4 C. E. Green (N. J.) 386.   In this last case
the court plainly indicates that if the railroad company had been
given the legislative authority, it could have laid its track upon a
dedicated street.

In *R. R. Co.* v. *Applegate*, 8 Dana 289, the supreme court of
Kentucky held that the construction of a railroad upon a street

under municipal and legislative sanction was not a nuisance, and that the abutting landowner could not enjoin.

*Perry* v. *R. R. Co.*, 55 Ala. 413 (28 Am. R. 740), is a well-considered case in which an elaborate review of the authorities is made, and the conclusion is reached that the owner of an abutting lot on a dedicated street has no right of action. The decisions of that court have always been held in high esteem by our supreme court and by the profession.

All the authorities, so far as I have found, hold that where the fee of the street is in the city, a railroad can lawfully be constructed thereon, where legislative authority is given, or where the municipal authorities, under a power in the charter, grants the right. And the distinction between a dedicated street, where the public has an easement, and one in which it has the fee in the street is unfounded. The basis of the decisions which hold that abutting owners on a dedicated street, by reason of their vague, intangible, and remote interest in the street, have other or higher rights than others where the fee is in the public, is unsound, as I contend.

· The charter of the city of Vicksburg, acts 1884, authorizes the grant of the right of way by ordinance for the construction of railroads on the streets. Express authority for this purpose was given in the charter of the Miss. Valley and Ship Island R. R. Co., and appellee holds as purchaser from that company. These facts are stated in order that there may be a full and complete adjudication of all the questions by this court, this being desired by both parties.

*Murray F. Smith*, for appellee, argued the case orally.

ARNOLD, C. J., delivered the opinion of the court.

Whether the abutting owner of land on a public street has such interest in the street as to require condemnation, or his consent, before the street can be lawfully used by a railroad company for constructing its track and operating its trains on the street, and to enable him to recover compensation for injuries sustained on account of the street being used for such purpose, is an open question in this state. There was some consideration of the subject in *Danna-*

*her* v. *The State*, 8 S. & M. 649, and in *N. O., J. & G. N. R. R.* v. *Moyer*, 39 Miss. 374, but the question was not decided in either case.

In a few states, notably in Pennsylvania, such right in the attingent owner, is denied ; but generally, there is a juster appreciation and better definition of private rights and interests, in regard to the matter.

It is obvious, that the right of the adjacent owner to the free use of the street on which his property is located, imparts value to the property, and that to deny or restrict his use of the street, by unusual, dangerous, and permanent obstructions and appliances placed in the street, would seriously affect the value and enjoyment of his property.   While the general public might be benefited by the existence of such obstructions and appliances, the adjoining owner might be greatly damaged, if not ruined by them, if the law afforded him no remedy.   Of such disadvantages, if any, as may result from the use of the street by the public, in the manner in which public streets are ordinarily used, he could not complain ; but it seems clear, that the construction and operation of a railroad in the street, in front of his property, without his consent, and without his being compensated, would be an invasion of his legal rights. This conclusion follows inevitably, unless railroads are among the objects for which public streets are originally designed.   Can railroads be said to be among such objects ?

A street is a public thoroughfare or highway, established for the accommodation of the public generally, in passing from place to place, and for such other incidental uses as are ordinarily made of public streets, such as laying drains, sewers, gas and water pipes, and the like.   Public streets are for the use and benefit of all, and no one has any exclusive rights and privileges therein.   They are free to all upon like conditions, and subject to use by any means of locomotion which is not destructive of the common uses and ordinary methods of travel.   If this is true, a railroad does not fall within the purposes for which public streets were originally established, and the occupation of a public street by a railroad is an ad-

ditional servitude on the land, and a perversion of the street from its original purposes. The introduction of a new motive power, would not perhaps, be material; but a railroad requires a permanent structure in the street, the use of which is private and exclusive. It confers upon an individual or corporation, rights and privileges in the street, which are incompatible with those of the public and of adjacent proprietors. To hold that a railroad is one of the legitimate uses of a public street, leads to the inconsistency, that the street may be monopolized by a corporation or an individual and filled with parallel tracks which would practically exclude all ordinary travel, and still be said to be devoted to the ordinary uses of a public street. Lewis on Eminent Domain, § 111; 1 Hare Const. Law 362; Cooley's Const. Lim. 678.

" When the owner of a tract of land lays the same out into lots and streets, and sells the lots, the purchasers of such lots acquire as appurtenant thereto a private right of way and access over the streets. This private right arises without any express grant and in the absence of any statute. The law presumes that the parties had in mind the advantages to be derived from the use of the proposed streets, and implies a right to such use as a part of the grant. If several persons, owners of distinct parts of a tract, should join in laying the same out into lots and streets, the result would be the same. The law would imply the grant of mutual easements of way and access, appurtenant to the respective lots, in the absence of any statute or express mention of such easements. These private rights or easements are the presumed, as well as the real consideration for the grant or dedication of a part of the tract to public use. If instead of making a gift of the streets to the public, the proprietors should voluntarily grant the streets for a consideration agreed upon and paid by the public, it would still be true in fact, and therefore presumed in law, that, in fixing the consideration to be paid, the parties contemplated the advantages to be derived from the use of the streets. That is, the consideration to each proprietor, would be the right to make use of the streets in connection with his lots, and a certain sum of money paid. Lewis on Eminent Domain, § 114. If the streets are established by the

exercise of the right of eminent domain, the effect, in principle, should not be different.    Lewis on Eminent Domain, § 114.

The laying out of a public street creates two co-existent rights— one, belonging to the public, to use and improve the street for the ordinary purposes of a street—the other, to the abutting owner, to have access to and from his property over the street, and to make such use of the street as is customary and reasonable.    Both, are valuable, and the one is as inviolable as the other.    It would be as unjust and unwarranted for the public to use and appropriate the street, so as to impair or destroy the rights of the abutting owner, without his consent and without compensation, as it would be for him, by a like course of conduct, to impair or destroy the rights of the public.

So that, it appears that the abutting owner has special interests and rights in a public street, which are valuable, and indispensable to the proper and beneficial enjoyment of his property.    His right to use the street as a street, is as much property as the street itself, and neither the public, nor a corporation, nor an individual, can lawfully deprive him of it, against his will, without compensation. If the street is needed for the purposes of a railroad, or for any other purpose inconsistent with the ordinary uses of a public street, the rights and interests of the abutting owner must be obtained, with his consent, or by the exercise of the right of eminent domain, as in other cases of taking private property for public use.    *Haynes* v. *Thomas*, 7 Ind. 38 ; *Tate* v. *O. and M. R. R. Co.*, Ib. 479 ; *Crawford* v. *The Village of Delaware*, 7 Ohio St. 460 ; *B. and M. R. R. Co.* v. *Reinhackle*, 15 Neb. 279 ; *Lahr* v. *Met. El. R. R. Co.*, 104 N. Y. 268.

If the rights of the abutting owner may be taken from him without his consent, or without compensation, " a system has been inaugurated," said the court of appeals of New York, " which resembles more nearly legalized robbery, than any other form of acquiring property."    *Lahr* v. *Met. El. R. R. Co.*, 104 N. Y. 268, 291.

The weight of judicial authority, undoubtedly is, that where the public have only an easement in the street, and the fee of the soil of the street is retained in the abutting owner, under the constitu-

tional guaranty of private property, a steam railroad cannot be lawfully constructed and operated thereon, against his will, and without compensation.    Lewis on Eminent Domain, §§ 113, 115; 1 Hare on Const. Law 362; Mills on Eminent Domain, 2d ed., § 204; 2 Dillon Mun. Corp., 3d ed., § 725.

A distiction is made by some of the authorities, in cases where the fee in the soil of the street is in the public—the state, county, or city—and where it remains in the abutting owner; and in the first case, the right of the abutting owner to compensation is denied, and in the latter, it is recognized and allowed.   We perceive no well-founded difference in principle, in such distinction.  If the fee is in the public, it is held in trust, expressly or impliedly, that the land shall be used as a street, and it cannot be applied to any other purpose, without a breach of trust.   It is only where the fee is in the public, free from any trust or duty, that it may be disposed of for any purpose that the public may deem proper.  Whether the abutting owner has simply an easement in the street, while the fee is in the public or in some other owner, or whether he has both the fee and an easement, he is equally entitled to require, that nothing shall be done in derogation of his rights.  1 Hare on Const. Law 370, 375; Lewis on Eminent Domain, §§ 114, 115; *Barney* v. *Keokuk*, 94 U. S. 324; *R. R. Co.* v. *Schurmeir*, 7 Wall. 272; *Story* v. *N. Y. El. R. R. Co.*, 91 N. Y. 123; 1 Rorer on Railroads 524.   *Haynes* v. *Thomas*, 7 Ind. 38; *Anderson* v. *Turbeville*, 6 Coldw. 150; *S. C. R. R. Co.* v. *Steiner*, 44 Ga. 546; *Crawford* v. *The Village of Delaware*, 7 Ohio St. 460.

It is apparent, that there is difference between the ordinary horse railway and the ordinary steam railway, with reference to their use of a public street, but whether the difference, is only one of degree, we are not called upon to decide in this case.

*Judgment reversed, demurrer overruled, and cause remanded.*

NOTE.—When the opinion in this case was announced Judge Campbell stated that, as the railroad in this instance connected distant points and merely passed through the city of Vicksburg, using the street for its track, he concurred in the result; but that in case of a railroad within a city, constructed and used as an ordinary street railway, possibly a different question would arise—a question not involved by the facts of this case and, therefore, not decided.