Imlay v. Union Branch Railroad Company.

WILLIAM H. IMLAY AND OTHERS vs. THE UNION BRANCH RAILROAD COMPANY.

The location of a railroad upon a public highway is the imposition of a new servitude upon the land, in addition to and distinct from that to which it was originally subjected when taken for a highway, and the owner of the fee is entitled to compensation for the damage caused thereby.

Under the general statute with regard to railroads, which provides that railroad companies shall pay all damages caused by laying out and making their roads, the incidental injury to land adjacent to that taken and belonging to the same proprietor, is to be considered in assessing damages.

Whether damages are to be paid for such injury to adjacent land not belonging to the same proprietor; qu.

THIS was an amicable submission to the superior court upon the following agreed statement of facts.

The Union Branch Railroad Company was incorporated in 1856, with power to construct a railroad through a portion of Commerce street in the city of Hartford, and are made subject by their charter to all the provisions and requirements of the general act with regard to railroad companies passed in 1849.* The plaintiffs are the owners of lands, stores and

* The 10th sec. of that act provides that " every railroad corporation shall be liable to pay all damages that shall be occasioned by laying out, making and maintaining their road, and such damages shall be estimated by three appraisers to be appointed by any judge of the superior court, upon application of said corporation after due notice to the other party, &c. * * * Provided, that no railroad shall be worked upon or opened across the lands of any person until the damages assessed to such person shall have been paid, or secured to his satisfaction, or deposited with the treasurer of the county for his use, &c."

dwelling-houses adjoining that part of the street which is to be occupied by the railway. The street is a public highway and the fee of the land within it is vested in the adjoining proprietors. The railroad company has commenced the construction of its road upon the street without any previous assessment of damages. The plaintiffs claim that damages should be appraised to them : 1. For taking their interest in the soil of the highway. 2. For the ordinary and inevitable injury to the adjoining lands and buildings, resulting from the appropriation of a city street to railway purposes. 3. For the depression of the pecuniary value of their adjoining property, if the same should appear to the appraisers to be unavoidable. 4. For the injury to certain proprietors and occupants, by the elevation, at some points, of the grade of the street to such an extent as to create an unsightly obstruction before the doors and windows of buildings, and to impede the approaches from the roadway to stores, warehouses, and dwellings. It is agreed, however, that the railway will generally coincide with the grade of the highway, and that its route and level have been selected with reasonable caution and a reasonable regard to the rights of adjoining proprietors. The plaintiffs seek an injunction, restraining the company from any further entry upon or occupancy of the street for the prosecution of their work, until an appraisal of damages is made, and the payment thereof or satisfaction therefor. The company resist this claim on the ground that they are not bound to pay damages for the use of the street for their railway.

Upon these facts the case was reserved for the advice of this court.

*L. F. Robinson* for the plaintiffs.

The charter of the defendants, (4 Private Acts, 1073,) subjects their proceedings to the provisions of the general railroad act of 1849. The 10th section of that statute, (Stat. Comp. 1854, p. 747,) requires that an appraisal of damages to land shall precede its appropriation by a railroad company. The plaintiffs demand an appraisal, both for taking the land to be

occupied by the railway and for the injury of the adjoining land.

1. The occupation for railroad purposes of a highway, of which the fee is in the adjoining proprietors, is a "taking" of their land. 1st. The fee of the soil remains in them. *Peck* v. *Smith*, 1 Conn., 103. *Chatham* v. *Brainard*, 11 id., 60. *Champlin* v. *Pendleton*, 13 id., 23. And an injury to their reversionary interest is a proper subject of legal compensation. *Read* v. *Leeds*, 19 id., 132. When the fee of highways is in the municipality, as in the city of New York, adjoining proprietors can not complain that its appropriation is a taking of their land. *Drake* v. *Hudson River R. R. Co.*, 7 Barb., 508. 2d. "Taking" land for a public purpose implies not the appropriation of the entire estate, but the mere imposition of a servitude upon it. The appropriation of a highway to the purposes of a railroad, subjects the soil to a new burden, to an additional servitude, not within the scope of the original sequestration. See remarks of Hinman J., in *Nicholson* v. *N. .Y. & N. H. R. R. Co.*, 22 Conn., 74, 85; *Ramden* v. *Manchester Junction R. R. Co.*, 5 Eng. Railway and Canal Cases, 552. The cases of *Williams* v. *Central Railroad Company*, 18 Barb., 222, and of the *Philadelphia and Trenton Railroad Company*, 6 Whart., 25, can not be defended on principle. The opening of a highway may be a positive benefit to the land, while its use for a railway would at once injure it. It can not be said that such an appropriation was contemplated when damages were assessed for the laying out of a street. If the highway should be discontinued, it is not probable that the occupancy of the railway company would be terminated thereby. If so the owner is obviously deprived of his right in the land, without compensation by the railway company. The entry of the latter imposes an additional burden therefore, on his estate. In Pennsylvania the decision in Wharton above referred to, has not received a universal assent. *Monongahela Nav. Co.* v. *Coons*, 6 Watts & Serg., 101, 117. *Mifflin* v. *R. R. Co.*, 16 Penn., 182, 192.

2. Incidental injuries to adjoining lots and buildings re-

sulting from the laying out of railways, are all a subject of compensation. *Bradley* v. *N. Y. & N. H. R. R. Co.*, 21 Conn., 294. 1st. If the soil of the highway is the land of the adjoining proprietors, the injury to their adjacent land is also to be considered by appraisers. *Clark* v. *Saybrook*, 21 Conn., 313, 324. 2d. Independently of such a consideration, it is the object of the general railroad act to provide for a preliminary appraisal of all permanent incidental damages to land by railroad companies. See the proviso. Stat. (Comp., 1854,) p. 747. See also *Drake* v. *Hudson R. R. R. Co.*, Supra.

*Hubbard* for the defendants.

First. The owners of the fee of the highway are not entitled to damages.

1. The general railroad law contemplates the assessment of damages only when land is taken. This is manifest from the following considerations. 1st. The company is authorized to *take* land, and if the owners of the land *taken* and the company agree, no assessment is provided for. Rev. Stat., Comp. 1854, § 9, p. 746. 2d. The assessment which is provided for in the act is expressly limited to cases in which " it is intended to *take any land* for the purposes aforesaid," and unless the company are going to take land they have no power to apply for the appointment of appraisers. See sec. 10th of the same statute.

2. The laying of a railroad track on a highway by authority of the sovereign power, leaving the way as a still existing public easement, is not a taking of land. *Lex. & Ohio R. R. Co.* v. *Applegate*, 8 Dana, 289. *Willing* v. *Phil. & Balt. R. R. Co.*, 5 Whart., 460. *Drake* v. *Hudson Riv. R. R. Co.*, 7 Barb.; 508. *Chapman* v. *Alb. & Schen. R. R. Co.*, 10 id., 360. *Williams* v. *N. Y. Central R. R. Co.*, 18 id., 222. This has been the law of this state as understood, received, and acted upon by the law making power, and assented to by the people of this state, from the formation of the constitution until now. In proof of this it is submitted, 1st. That all the cities of the state, both ancient and modern, have

power by law to lay out sewers in highways, without making compensation as required by the constitution when land is taken. The discrimination between highways and other lands is very marked in the case of the city of Hartford. The city is required to make compensation in case of laying a sewer or drain through private lands, not otherwise. 2d. That the legislature has been accustomed to grant the right to private corporations to lay gas pipes and water pipes and sewers through the highways of cities without providing compensation. 4. Private Acts, 1104, et. seq. And in all such cases, where liberty is given to enter on private lands, an assessment is provided for. *New London · Aqueduct Co.,* 1 Private Acts, 51. *Norwich Aqueduct Co.,* id., 53. *Sharon Aqueduct Co.,* id., 59.

Second. No consequential damages are to be assessed in this case to parties whose lands are not taken ; the general railroad law not providing, as we claim, for the appraisal of damages of any kind whatever except in case of the taking of land. In addition to the considerations already suggested, bearing upon the construction of this law, we would call the attention of the court to the following. 1st. The act in question for the purpose of securing payment of damages to every party entitled thereto by assessment beforehand, provides that the road shall not be " opened across the land of any person until the damages assessed to such person " shall be paid, &c. See proviso, Stat. (Comp. 1854,) § 10, p. 747. If consequential damages were to be assessed under the act in advance, as direct damages are, the law would provide for the security of the former as well as of the latter. There is nothing in the act to prevent a railroad company from going forward to build their road because of the non-assessment and non-payment of consequential damages. An injunction therefore would not lie in such a case. 2d. That consequential damages are not within the contemplation of the act is further evident from the fact that the commissioners are required, before approving the location of the road, to give notice only to the " owner of such land." The appraisers are also required to see that " the owners of the land taken," shall have notice to attend,

&c.   See § 20, page 749.   If consequential damages are to be assessed in advance, it would seem that the persons having claim to such damages should have notice of the proposed location and appraisal, but the statute nowhere prescribes notice for the assessment of damages to any other persons than the owners of land taken.   3d.  Consequential damages are of such a contingent character and so uncertain in amount that they can not be reasonably assessed in advance.   The road must be built before the fact of such damages or their amount can be certainly ascertained. This may not be true in all cases, but is in most cases; and if the law requires an assessment as a condition precedent in one case, it requires it in every other case.   A railroad could not be built if all consequential damages were to be assessed in advance.   The law has therefore wisely omitted this class of damages, at least the prior assessment of them.   4th. Consequential damages are held not to be within the language of the act in regard to the laying out of highways, though in that case the language is exceedingly broad. Rev. Stat., tit. 24, § 24, 25, 28.   It may be said that a different rule of construction should prevail in the case at bar, but if the construction in *Clark* v. *Saybrook*, 21 Conn., 313, was admissible there, it is inevitable here.   5th.  The decision in *Bradley* v. *N. Y. & N. H. R. R. Co.*, 21 Conn., 294, has no bearing on this question.   That case arose under the peculiar language of a charter.   The language of that charter differs from that of the act here in question.   That charter awarded all damages that might " arise to any person or persons;" and provided that if " the person to whom damage shall so arise " (not as in the act the *owner of land taken,*) does not agree, &c., then there shall be an appraisal ; and that the appraisers shall assess damages " for all land taken or injured."   6th.  There is in the act but a single clause which can possibly, by the most latitudinarian construction, be held to reach a case of consequential damages, and that is the phrase " all damages " in the beginning of sec. 10.   But this general phrase is to be construed and limited by what precedes and follows ; all else and those parts of the act which

provide a remedy for these very damages are confined to damages for land taken. This general phrase was not used to cover consequential damages arising to outside owners of land, but damages both direct and consequential to persons whose land is taken. For it is admitted that consequential damages may be included in direct damages in cases where land is taken ; that is, " all damages " in such a case.

STORRS, C. J. Had the land on which the defendants have undertaken to build their railway, never become a public street, the right of the petitioners to a pre-appraisement of damages would be undisputed, such a right being literally conferred by the general railroad law of this state.

But, as the locality is a highway, it is not admitted that the remaining estate of the owners of the soil can justly be said to be taken or appropriated, when the land is permanently subjected to railway uses and to the control of a railway corporation.

We assume of course, that by the establishment of the highway, the estate of the proprietors of the land so appropriated was not extinguished. The fee was no less in them than before. The land is said to be taken ; but the taking of land for public uses is a term which has a qualified signification, and implies no more than that the property is to be permanently subject to the particular use for which the public require it. The discontinuance of the use, as is well understood, restores the whole estate disencumbered to its owner.

Hence, when land is condemned for a special purpose on the score of public utility, the sequestration is limited to that particular use. Land taken for a highway is not thereby convertible into a common. As the property is not taken, but the use only, the right of the public is limited to the use, the specific use, for which the proprietor has been divested of a complete dominion over his own estate.

These are propositions which are no longer open to discussion.

But it is contended that land once taken and still held for

highway purposes, may be used for a railway without ex-
ceeding the limits of the easement already acquired by the
public. If this is true, if the new use of the land is within
the scope of the original sequestration or dedication, it
would follow that the railway privileges are not an encroach-
ment on the estate remaining in the owner of the soil, and
that the new mode of enjoying the public easement will not
enable him rightfully to assert a claim to damages therefor.
On the contrary, if the true intent and efficacy of the original
condemnation was not to subject the land to such a burden
as will be imposed upon it when it is confiscated to the uses
and control of a railroad corporation, it can not be denied
that in the latter case the estate of the owner of the soil is
injuriously affected by the supervening servitude; that his
rights are abridged, and that, in a legal sense, his land is
again taken for public uses. Thus it appears that the court
have simply to decide, whether there is such an identy
between a highway and a railway, that statutes conferring a
right to establish the former, include an authority to con-
struct the latter.

The term public highway, as employed in such of our
statutes as convey the right of eminent domain, has certainly
a limited import. Although, as suggested at the bar, a navi-
gable river or a canal is, in some sense, a public highway,
yet an easement assumed under the name of a highway
would not enable the public to convert a street into a canal.
The highway, in the true meaning of the word, would be de-
stroyed. But as no such destruction of the highway is
necessarily involved in the location of a railway track upon
it, we are pressed to establish the legal proposition, that a
highway, such as is referred to in these statutes, means, or at
least comprehends, a railroad. Such a construction is possi-
ble only when it is made to appear that there is a substan-
tial, practical or technical identity between the uses of land
for highway and for railway purposes

No one can fail to see that the terms railway and high-
way are not convertible, or that the two uses practically con-
sidered, although analogous, are not identical. Land as

ordinarily appropriated by a railroad company is inconvenient, and even impassable, to those who would use it as a common highway. Such a corporation does not hold itself bound to make or to keep its embankments and bridges in a condition which will facilitate the transitus of such vehicles as ply over an ordinary road. A practical dissimilarity obviously exists between a railway and a common highway, and is recognized as the basis of a legal distinction between them. It is so recognized on a large scale, when railway privileges are sought from legislative bodies and granted by them. If the terms highway and railway are synonymous, or if one of them includes the other by legal implication, no act could be more superfluous than to require or to grant authority to construct railways over localities already occupied as highways.

If a legal identity does not subsist between a highway and a railway, it is illogical to argue, that, because a railway may be so constructed as not to interfere with the ordinary uses of a highway, and so as to be consistent with the highway right already existing, therefore such a new use is included within the old use. It might as well be urged, that if a common, or a canal, laid out over the route of a public road, could be so arranged as to leave an ample roadway for vehicles and passengers on foot, the land should be held to be originally condemned for a canal or common, as properly incidental to the highway use.

There is an important practical reason why courts should be slow to recognize a legal identity between the two uses referred to. They are by no means the same thing to the proprietor whose land is taken : on the contrary, they suggest widely different standards of compensation. One can readily conceive of cases, where the value of real estate would be directly enhanced by the opening of a highway through it, while its confiscation for a railway at the same or a subsequent time, would be a gross injury to the estate, and a total subversion of the mode of enjoyment expected by the owner when he yielded his private rights to the public exigency.

But essential distinctions also exist between highway and railway powers as conferred by statute; distinctions which are founded in the very nature of the powers themselves. In the case of the highway, the statute provides that, after the observance of certain legal forms, the locality in question shall be forever subservient to the right of every individual in the community to pass over the thoroughfare so created at all times. This right involves the important implication that he shall so use the privilege as to leave the privilege of all others as unobstructed as his own, and that he is therefore to use the road in the manner in which such roads are ordinarily used, with such vehicles as will not obstruct, or require the destruction of, the ordinary modes of travel thereon. He is not authorized to lay down a railway track, and run his own locomotive and car upon it. No one ever thought of regarding highway acts as conferring railway privileges, involving a right in every individual not only to break up ordinary travel, but also to exact tolls from the public for the privilege of using the peculiar conveyances adapted to a railroad. If a right of this description is not conferred when a highway is authorized by law, it is idle to pretend that any proprietor is divested of such a right. It would seem that, under such circumstances, the true construction of highway laws could hardly be debateable, and that the absence of legal identity between the two uses, of which we speak, was patent and entire.

Again, no argument or illustration can strengthen the self-evident proposition that when a railway is authorized over a public highway, a right is created against the proprietor of the fee in favor of a person, an artificial person, to whom he before bore no legal relation whatever. It is understood that when such an easement is sought or bestowed, a new and independent right will accrue to the railroad corporation as against the owner of the soil, and that, without any reference to the existence of the highway, his land will forever stand charged with the accruing servitude. Accordingly, if such a highway were to be discontinued according to the legal forms prescribed for that purpose, the railroad corporation

would still insist upon the express and independent grant of an easement to itself, enabling it to maintain its own road on the site of the abandoned highway.

We are of opinion therefore, as was distinctly intimated by this court in a former case, (see opinion of Hinman, J., in *Nicholson* v. *N. Y. & N. H. R. R. Co.*, 22 Conn., 85,) that to subject the owner of the soil of a highway to a further appropriation of his land to railway uses, is the imposition of a new servitude upon his estate, and ·is an act demanding the compensation which the law awards when land is taken for public purposes.

Our conclusion may be the occasion of some novelty of practice under railway grants, but is not an innovation on the law.

In England it would seem from an examination of a late case, (*Ramsden* v. *Manchester Junction R. R. Co.*, 5 Eng. Railway and Canal Cases, 552,) that the owner's residuum of estate in land used for a highway, is conceded to be a proper subject of pecuniary damages when the same land is tunneled for a railroad.

In this country the course of decisions upon this subject is not uniform. Many years ago in the state of New York, the supreme court promulgated through Chief Justice Nelson, a decisive opinion in favor of the same position as that now assumed. (*Presbyterian Soc. of Waterloo* v. *Auburn & Rochester R. R. Co.*, 3 Hill, 567.) In later cases, and especially in that of *Williams* v. *Central R. R. Co.*, (18 Barb., 222,) the doctrine has been advanced that the application of a highway to railway purposes is only a new mode of enjoying the easement previously acquired by the public. It would have been proper for us to examine the reasoning and opinion of the court sustaining this suggestion, had not the court of appeals, shortly after it had been determined to sustain the present petitioners, almost unanimously rendered a decision concurrent in its result with the views adopted by us, and reversing the case just cited. See Law Reporter for December, 1857.

The case of the *Ohio & Lexington R. R. Co.* v. *Applegate,*

(8 Dana, 289,) was cited at the bar. But it is quite clear that the Kentucky decision, like many of those reported by Barbour, (Sup. Ct. Rep., N. Y.,) proceeded on the ground that the ownership of the fee of a highway is vested in the public, or its representative, instead of the original proprietor. The present decision is founded upon opposite premises.

The attention of the supreme court of Massachusetts, (*Springfield* v. *Conn. Riv. R. R. Co.*, 4 Cush., 63,) has been drawn to the matter under review; and the utter want of identity between railway uses and highway uses is summarily pointed out by Chief Justice Shaw.

In Pennsylvania an opposite doctrine was early announced by the supreme court of that state, (*Phila. and Trenton R. R. Co.*, 6 Whar., 25,) but the decision was questioned a few years after by Houston J., in the case of the *Monongahela Co.* v. *Coons*, (6 Watts & Serg., 117,) and a wide departure from its principles was certainly made in *Mifflin* v. *R. R. Co.*, (16 Penn. State R., 192,) where it is decided that the payment of damages to the owner of the soil of a highway by a turnpike company will not preclude him from obtaining a new appraisal when a railroad is laid out over the same locality.

Our decision upon the point now discussed dispenses with any enquiry as to the right of the petitioners to an assessment of merely consequential damages to the land adjacent to the highway, inasmuch as it is fully conceded by the defendants, that where land is taken, injury to the adjacent territory owned by the same proprietor is always to be considered by appraisers.

No argument has been offered against the equitable remedy to which the petitioners have seen fit to appeal, and we can have no doubt that it is appropriately sought.

Our advice is, that the superior court enjoin the defendants from entering upon or opening their railway through Commerce street, no appraisal of damages having been made in favor of the owners of the soil of the highway.

In this opinion the other judges concurred.

Injunction advised.