HENRY M. TABER vs. NEW YORK, PROVIDENCE AND BOSTON RAILROAD COMPANY.   IN RE CLAIM OF JAMES TIFFANY.

MARCH 8, 1907.

PRESENT: Douglas, C. J., Dubois, Blodgett, Johnson, and Parkhurst, JJ.

(1)   *Eminent domain.   Railroads.   Damages.*

By act of the General Assembly, permission was given defendant railroad company "to widen, construct, and use its old roadbed in the city of Providence, and to extend the same across Henderson street, through Allens'

avenue, and in the same direction until it comes to Eddy street." The company located its railroad in Allen's avenue and filed a plat of its location, subsequently abandoning a portion of said location, retaining a strip forty feet wide in the center of Allen's avenue.

Claimant owned a tract of land consisting of a large number of lots on the Allen plat extending from Allen's avenue to the harbor line, and said Allen's avenue was a part of said plat. At the time of the location Allen's avenue was a public highway and the act authorizing the extension of the railroad provided: "Said railroad company shall not lay any rails in any of the streets without the permission of the city council and upon such terms and conditions as it may prescribe:"—

*Held,* that the company was not entitled to occupy its location forty feet in width in Allen's avenue to the exclusion of the public.

The right of a railroad to cross or pass along a highway does not include the right to build permanent structures upon it or to use it for a freight yard or any exclusive purpose, but is limited to a reasonable use by crossing, passing, and repassing consistent with the earlier public right.

(2)  *Railroads.  Damages and Location.*

As the fee to the center of Allen's avenue was in the claimant, and defendant company, in addition to its right to lay rails, had taken a forty-foot strip as a railroad location, such location was a taking of property for which claimant was entitled to compensation at the value of the land at the time of said location; not its value if free from the easement of the public highway, but its value subject to such easement.

(3)  *Railroads.  Damages from Location to Abutting Land.*

Claimant was further entitled to damages caused by the location of the railroad to his land abutting on Allen's avenue. Where the fee of the street is in the abutting owner the measure of damages is the value of the land taken, subject to the easement for a public highway, and damages to the remainder of the tract by reason of the taking of a part for railroad purposes.

(4)  *Damages to Tide-flowed Lands.*

As the title to tide-flowed lands is in the State, claimant would not be entitled to damages to such lands caused by the location of the railroad; but as the license to fill out to the harbor line is an appurtenance to the upland, it may properly be considered in arriving at the value of the upland itself and determining its value at the time of the location.

(5)  *General and Special Benefits in Assessment of Damages.*

While benefits shared in general by the community along the line of a railroad can not be deducted from the damages, yet a benefit may be special and peculiar to a tract of land of which a part is taken, although it accrues to a number of tracts in the vicinity where all the tracts occupy a peculiar situation with reference to the improvement by reason of which the benefit attaches. Under this rule special benefits shown to have accrued to claimant's land from the location of the railroad should be deducted from the special damages in arriving at the damage to the land not taken.

(6)  *Rule for Assessment of Damages for Land Taken and Damages or Benefits to Remainder of Tract.*

The charter of the New York, Providence and Boston R. R. Co., under which the location was made, contains no express provisions as to the method by which the damages shall be estimated, leaving the question to be decided solely under the constitution, article I, section 16, as to compensation for private property taken for public uses.

The measure of damages, therefore, in such a case, is the value of the land taken, and such special damage, if any, as was caused to the remainder by the location of the railroad.

For the land taken the owner must receive the just compensation provided by the constitution, that is, the value of the land taken, and the fact of damage to the remainder of the tract is to be established, like any other fact, by evidence.  The special damages are to be shown and also the special benefits, and if the damages exceed the benefits, then the excess is the amount of damage to such remainder, and is to be added to the value of the land taken to ascertain the whole damage.  If, however, the special benefits to said remainder equal or exceed the special damages to the same, then the remainder has not been damaged.

Appeal from award of commissioners on assessment of damages caused by location of railroad.  Heard on exceptions of claimant after denial of his motion for new trial, and to rulings of trial judge.  Remanded to Superior Court for new trial.

Johnson, J.  By an act passed at the May session of the General Assembly, 1888, permission was given to the defendant railroad company, among other things, "to widen, construct, and use its old roadbed in the city of Providence, and to extend the same across Henderson street, through Allen's avenue, so called, and in the same direction, until it comes to Eddy street." An amendment to this act, passed at the January session, 1891, merely extended the time in which the railroad company might file its location in the Court of Common Pleas.

On the 22d day of July, 1891, the railroad company located its railroad in Allen's avenue, in pursuance of the authority given it by said acts and filed its report, and a plat of its said location, in the Court of Common Pleas in Providence.  May 15, 1896, it filed in the Common Pleas Division of the Supreme Court an abandonment of a portion of its said location, retaining a strip forty feet wide in the center of Allen's avenue.

On February 14th, 1896, the petitioner filed his petition, in

said Common Pleas Division, that commissioners be appointed to estimate damages caused by said location. After numerous hearings, and an amendment of the petition, the same was granted, and three commissioners were appointed by the court to estimate damages.

At the time of said location, and up to the present time, the claimant, Tiffany, owned a tract of land, consisting of a large number of lots on the Allen plat, extending from Allen's avenue out to the harbor line, and said Allen's avenue was a part of said plat.

The claimant duly filed and proved his claim for damages by reason of said location, before said commissioners, and in their report, filed in said Common Pleas Division, December 27, 1900, said Tiffany was awarded the sum of $2,718. From this award Tiffany appealed, and his claim for damages was thereafterwards tried to a jury.

Upon such jury trial no damages whatever were awarded said claimant.

After verdict the claimant moved that a new trial be granted him, which motion was denied, and he duly excepted thereto.

He then filed his bill of exceptions to the rulings of the trial judge and to his denial of said motion, and the case is now before us on said exceptions.

The exceptions raise the following questions:

1. Is the railroad company entitled to occupy its said location, forty feet in width in Allen's avenue, to the exclusion of the public?

2. Is the claimant Tiffany entitled to damages for the taking by the railroad company of his land in said Allen's avenue?

3. Is said claimant entitled to damages, caused by the location of said railroad, to his land east of and abutting on said Allen's avenue, and not covered by tide water?

4. Is said claimant entitled to damages, caused by said location, to tide-flowed lands adjoining his upland on said Allen's avenue?

5. If the claimant is entitled to damages by reason of said location, are benefits from said location which are general to

all abutters on said Allen's avenue to be deducted from his damages?

(1)   We think the first question must be answered in the negative. At the time of the location of the railroad Allen's avenue was a public highway.   The act authorizing the extension of the railroad through said avenue provided:

"SEC. 2.   Said railroad company shall not lay any rails in any of the streets in the city of Providence without the permission of the city council of said city, and upon such terms and conditions as it may prescribe."

A public highway can not be condemned for railroad purposes without express legislative authority.   And when the consent of the municipality in which the highway is situated is required by the act granting the authority it is a condition precedent to any valid right to use the street.   *City of Philadelphia* v. *River Front R. Co.*, 173 Pa. St. 334; *Appeal of Pittsburgh, etc., R. Co.*, 1 Penn. 449; *West Jersey Traction Co.* v. *Camden Horse R. Co.*, 53 N. J. Eq. 163.   The right of a railroad to cross or pass along a highway does not include the right to build permanent structures upon it (other than its tracks at the grade of the street), or to use it for a freight yard, or any exclusive purpose, but it is limited to a reasonable use by crossing, passing, and repassing, consistent with the earlier public right.   *Tate* v. *Ohio, etc., R. Co.*, 7 Ind. 479; *Lackland* v. *North Missouri R. Co.*, 31 Mo. 180; *Savannah, etc., R. Co.* v. *Shiels*, 33 Ga. 601; *Gahagan* v. *B. & L. R. Co.*, 1 Allen, 187.   In this case the court (p. 190) says: "It was undoubtedly true that the defendants could not lawfully use the highway as a part of their freight yard; that is to say, they had no right to make the exclusive use of it which their own convenience required, which they could make of their own property.   But they could pass and repass upon the highway for any lawful purpose, provided they used it only to a reasonable extent, and in a reasonable manner, without encroaching upon the rights of others who had an equal right to use it."   In *Gear* v. *C. C. & D. R. R. Co.*, 43 Iowa, 83, the railroad company took one hundred feet of land for a right of way.   A part of this right of way was a travelled road, if not a public highway.   The court says: "When a railroad com-

pany lays its tracks upon a public highway, it undertakes at its peril, by some means, to put the public highway in as good condition for travel as before.   For its neglect to do this it may be indicted, and, if necessary to protect the public in the use of the highway, the obstruction may, by a proper order, be abated even if the result be the destruction of the railroad at the point where it obstructs the public travel."

(2)   As to the second question: Allen's avenue being a public highway at the time of the location of the railroad, the company could only lay its rails therein with the consent of the city council of Providence, and could not so use the street as to prevent the reasonable use of the same as such public highway. But in addition to the right to lay rails with such consent of the city council, the company in this case has a location forty feet in width along Allen's avenue in the center thereof.   It has not been content with the right to lay rails, but has exercised the right, under the act above referred to, of taking said forty-foot strip as a railroad location.   Such being the case, and the fee to the center of the street being in Tiffany, it is a taking of his property for which just compensation must be made.   Before the location of the railroad company, if the highway had been abandoned the use of the land in question would have reverted to Tiffany.   After the location, in case of such abandonment the land would still be subject to the easement of the railroad use.   As was said by Storrs, C. J., in *Imlay* v. *Union Branch R. R. Co.*, 26 Conn. 249 (p. 258): "No argument or illustration can strengthen the self-evident proposition that when a railway is authorized over a public highway, a right is created against the proprietor of the fee in favor of a person, an artificial person, to whom he before bore no legal relation whatever.   It is understood that when such an easement is sought or bestowed, a new and independent right will accrue to the railroad corporation as against the owner of the soil, and that, without any reference to the existence of the highway, his land will forever stand charged with the accruing servitude."

The claimant is therefore entitled to compensation for his land in Allen's avenue covered by the railroad location, at its value at the time of said location; not the value it would have

if free from the easement of the public highway, but its value subject to such easement. Evidence, therefore, as to the value of said land was properly admissible, and the exclusion of the same was erroneous.

(3)   The third question must be answered in the affirmative. Where the fee of the street is in the abutting owner, the measure of damages is the same as in other cases where a part of a tract is taken; that is, the value of the land taken, subject to the easement for a public highway and damages to the remainder of the tract by reason of the taking of a part for railroad purposes. *Imlay* v. *Union Branch R. Co., supra; Henderson* v. *N. Y. C. R. R. Co.,* 78 N. Y. 423; *Hegar* v. *Chicago, etc., R. Co.,* 26 Wis. 624; *Muller* v. *Southern Pac. R. Co.,* 83 Cal. 240; *Laing* v. *N. J. R. Co.,* 54 N. J. L. 576.

(4)   In regard to the fourth question, whether the claimant is entitled to damages caused by said location to tide-flowed land adjoining his upland on said Allen's avenue, it is evident that he had at the time of said location no title to said tide-flowed lands. That the title to such lands is in the State has been uniformly and repeatedly decided by this court. *Engs* v. *Peckham,* 11 R. I. 210; *Railey* v. *Burges, Ib.* 330; *Brown* v. *Goddard,* 13 R. I. 76; *Folsom* v. *Freeborn, Ib.,* 200; *Allen* v. *Allen,* 19 R. I. 114; *City of Providence* v. *Comstock,* 27 R. I. 537.

In *Engs* v. *Peckham, supra,* the court held that the establishment of a harbor line operates as a license or invitation to the riparian proprietor to fill or wharf out to that line. The title not being in the riparian proprietor, he would not be entitled to damages to such tide-flowed lands caused by the location of a railroad. The license to fill out to the harbor line, however, is an appurtenance to the upland, and may properly be considered in arriving at the value of the upland itself; that is, the effect of the existence of such license to fill may be taken into account in determining the value of the upland at the time of the location.

(5)   In considering the fifth question, whether benefits from said location which are general to all abutters on Allen's avenue are to be deducted from his damages, we have to say that the

determination of this question depends upon whether such benefits are special or general. The decisions in regard to the deduction of benefits are very conflicting, some holding that benefits both general and special are to be deducted; and some, that no benefits whatever are to be deducted. The weight of authority, however, seems to us to be that only special benefits can be deducted. The distinction between the two classes is not always clear in the decisions. We think, however, that it is very well stated in *Roberts* v. *Brown County*, 21 Kan. 247. That was the case of the layout and construction of a public road, but the remarks of the court on the question of general and special damages are in point. The court says (pp. 251–2): "It has already been decided by this court, that ' in the appropriation of the right of way for a public road, the public has a right, in the absence of any special statutory or constitutional restrictions, to reduce the damages to be awarded to the landowner by the amount of benefits which inure to him as the *direct* and *special* result of the proposed road, *but not by any which he receives in common with the rest of the public.*' . . . That is, the benefits which may be taken into consideration for the purpose of reducing the damages to be awarded to the landowner are such as are direct and special as to him and his land, and not such as are received in common by the whole community; and with reference to cause and effect, they are such as are direct, certain, and proximate, and not such as are indirect, contingent, or remote. It is true, that increased value of the land is often taken into consideration in fixing the amount of the damages; but this is done only where such increased value arises from some direct, special, and proximate cause, such as the draining of the land, or building bridges across streams running through the land, or making some other valuable improvement on or near the land, by means of which the owner will be enabled to enjoy his land with greater advantage."

It is expected that railroads will be a benefit to the public; that land values will be increased by their being built and operated. It is for the purpose of benefit to the public that

they are created and permitted to invoke the power of eminent domain in obtaining their rights of way.

It is clear that benefits which are shared in general by the community or country along the line of the railroad can not be deducted from the damages. It is not so clear that benefits to all the abutting owners on Allen's avenue would be classed as general benefits. The mere fact that a railroad runs by a piece of land may not affect its value at all. If, however, the land is near a terminus or station, or is so located with reference to a railroad that it is clearly apparent that great benefit accrues to it by reason of its being so located, benefit clearly distinct from the benefit which is enjoyed by the community generally, in that case we do not see that such benefit is rendered any less a special benefit, in the proper sense of the word, because it is not absolutely monopolized by a single abutter but is shared with others in close proximity to him and under similar conditions. The question is not to be decided by proof of the fact that the land abuts on Allen's avenue, but by proof of the fact that special benefits, as above defined, have accrued to said land by reason of the location of the railroad in Allen's avenue. "A benefit may be special and peculiar to a tract of land of which a part is taken, although it accrues to a number of tracts in the vicinity, where all the tracts occupy a peculiar situation with reference to the improvement, by reason of which the benefit attaches." 15 Cyc. 771. See also, *Met. West Side El. R. Co.* v. *Stickney,* 150 Ill. 362; *Met. West Side El. R. Co.* v. *White,* 166 Ill. 375; *Pittsburgh, etc., R. Co.* v. *Robinson,* 38 Leg. Int. (Pa.) 22; *Pittsburgh Southern R. Co.* v. *Reed,* 44 Leg. Int. 92. If special benefits therefore are shown to have accrued to the land in question from the location of the railroad, they should be deducted from the special damages in arriving at the damage to the land not taken.

(6)   The case appears to have been tried upon the theory that the special benefits to the claimant's land were to be deducted from the sum total of his damages. Evidence of the value of the claimant's land in the forty-foot location of the railroad company having been excluded by the court, there was, of course, only evidence of damage to the adjoining land. Such

being the case, the instruction of the court that special benefits were to be deducted from the damages was correct upon the testimony that was in. As, however, evidence of the value of said land in Allen's avenue covered by the railroad location should have been admitted, we feel, in view of the necessity for a new trial, that it is proper to lay down what we consider to be the true rule. The authorities are agreed that where part of the tract is taken, just compensation includes not only the value of that which is taken, but damages, if any, to the remainder. There is, however, great diversity of opinion as to the right to consider the benefits which may accrue to the remainder by reason of the taking of a part for public use. In some States the consideration of benefits is prohibited by the constitution. In others a general statute gives authority to condemn, providing sometimes that there shall be no deduction for benefits, and sometimes that benefits shall be taken into consideration and prescribing the manner in which they shall be deducted. In the absence of such constitutional or statutory provisions, it becomes a question of construction as to the meaning of the constitutional provision for compensation.

The constitution of this State provides, article I, section 16, that "private property shall not be taken for public uses without just compensation." Under constitutional provisions similar to ours the courts have held that no benefits could be considered as affecting the question of damages; that special benefits may be deducted from damages to the remainder, but not from the value of the part taken; that benefits both general and special may be deducted from damages to the remainder, but not from the value of the part taken; that special benefits may be deducted from both the damages to the remainder and the value of the part taken; and that both general and special benefits may be deducted from the damages to the remainder and the value of the part taken. The decisions are so conflicting that, as is said in 2 Lewis, Eminent Domain, § 471a, "the only general rule which can be laid down where part of a tract is taken is that the measure of damages consists of the value of the part taken and damages to the remainder, less such bene-

fits, if any, as may be set off by the law of the forum." In many of the cases which we have examined the charter of the railroad company has provided that benefits to accrue to the claimant's land by the construction of the railroad should be taken into consideration and allowed by way of recoupment against the damages which the claimant might sustain. The amendment of the charter of the New York, Providence and Boston Railroad Company. authorizing the taking in this case, provides that all damages that may be occasioned thereby to any person, company, or corporation by the taking of land or material shall be ascertained and paid for in the manner provided in "An act in addition to and in amendment of an act to incorporate the New York, Providence and Boston Railroad Company," passed at the October session, 1846, which act provided that the commissioners, "after hearing the parties interested, shall estimate all such damages as they shall think any person shall sustain by the construction of such railroad through his land." The question, therefore, comes before us for consideration solely under the constitutional provision as to compensation for private property taken for public uses.

In support of the proposition that benefits received from the railroad are to be deducted from both the value of the part taken and the damages to the remainder, counsel for the railroad company has cited several cases.

In *Winona & St. Peter R. R. Co. v. Waldron*, 11 Minn. 515, the charter of the company provided: "In estimating damages or compensations to be paid to any claimants to lands or interests in lands so proposed to be taken, the said commissioners shall take into consideration the benefits to accrue to the claimant by the construction of said railroad, and allow such benefits by way of recoupment against the damages which such claimant may sustain thereby, and report only the balance of damages which shall remain after applying such benefits in recoupment thereof, but no balance shall be in any case reported in favor of the company." Notwithstanding this provision of the charter the court was divided upon the question, the majority holding that against the cash value of the land special benefits occasioned by the construction of the road to the remainder of the

same tract may be set off, and Wilson, C. J., dissenting from that view on the ground that it violated the constitutional provision for just compensation for private property taken for public use.

In *Meacham* v. *Fitchburg R. R. Co.*, 4 Cush. 291, as in other Massachusetts cases, the same measure of damages is applied to the taking of land for a railroad as to such taking for a highway.

In *Freedle* v. *N. C. R. R. Co.*, 49 N. C. 89, there was no constitutional provision as to compensation for property taken for public use, and the charter of the company provided for the set-off of benefits against damages.

*Cleveland, etc., R. Co.* v. *Ball*, 5 Ohio St., 568, also cited by defendant's counsel, does not decide that special benefits may be deducted from the value of the part taken, but does hold that such benefits are to be taken into consideration in estimating the compensation to be allowed for the incidental injury or loss of value to the residue of the land.

We have examined many other cases which apparently support the above proposition as to the set-off of special benefits against the value of the part taken, but the constitutional provisions, statutes, and charters are so widely variant that there appears to be no general rule deducible from them. In many of the States the layout of highways and the location of railroads are treated by the courts as being essentially identical, so far as the set-off of benefits against damages is concerned.

The Rhode Island cases cited by counsel for the railroad company are not in point. *Howard* v. *City of Providence*, 6 R. I. 514, and *Central Land Co.* v. *Same*, 15 R. I. 250, were both highway cases, and the statute under which the land was taken provided not only for the set-off of benefits, but also for the collection of the excess, if any, of such benefits over damages.

The rule contended for has no statutory support in this State and, besides, seems to us to be unjust and inequitable. Take the case of three landowners: A. and B. have lots 100 feet square, and C. a lot 100 feet by 200 feet. A railroad location is made, 100 feet wide, taking all of A.'s lot, none of B.'s and one-half of C.'s, as shown in the accompanying diagram.

Applying the rule contended for, we have this situation: All of A.'s lot is taken, and his damage would be the value of his land; none of B.'s lot is taken, and his damage would be the special damage, if any, to his land from the location of the railroad, less the special benefits, if any, to the same, caused by such location.   C.'s damage would be the value of the land taken, plus the special damages, if any, to the remainder, with any special benefits to said remainder, deducted from the sum total of the value of the land taken and the special damages to the remainder.   Suppose the value of all the land in question at the time of the location of the railroad is ten cents per square foot.   A.'s damage would be $1,000.   B., having lost no land, the special damages are estimated, and it appears that by reason of the special benefits, after all special damages are deducted, his land is now worth twenty cents per square foot, so that he has received an actual benefit of $1,000.   He keeps his land with the increased value.   C. has lost 10,000 feet of land, and by a process of estimation of special damages and special benefits, as in the case of B., it is found that although C.'s land in the beginning was worth $2,000, and he has lost half of it, the remainder is still worth $2,000, and therefore C.'s damage is nothing.   The railroad company can not compel B. to pay for

the special benefits to his land, because no part of his land was taken against which the special benefits to the remainder could be offset.   But as one-half of C.'s land was taken, the railroad company can compel him to pay for the special benefits to the remainder by applying them in full payment for the part taken.

We are unable to assent to this proposition.   The true reason why B. can not be compelled to pay for the special benefits to his land is not because no part of his land was taken against the value of which such special benefits could be offset, but because the railroad company has not the right to exercise the power of taxation; and the same reason applies with equal force in the case of C.   The distinction between the exercise of the power of taxation and of the right of eminent domain is clearly shown *In the Matter of Dorrance Street,* 4 R. I. 230.   The act under consideration in that case, "An act in relation to the laying out, enlarging, straightening, or otherwise altering streets in the city of Providence," passed at the January session, 1854, provided for a "just and equitable estimate and assessment of the amount of the loss and damage, if any, over and above the benefit and advantages, and of the benefit and advantage, if any, over and above the loss and damage," and also how the excess in either case should be paid or collected. On page 246 the court, Ames, C. J., said: "The form and manner, spirit and bearing of an act of state, decide whether it be an exercise of the right of eminent domain, or the right of taxation, and not the mere physical nature of the thing ultimately obtained by it for the public use. . . . The forms of taxation are as various as the ingenuity of man, ever pursuing the Sysiphean task of endeavoring to tax and to please,— difficult, according to Burke, as 'to love and be wise,' can devise; and yet no one could ever mistake any of these forms,— capitation, income, direct, excise, customs, house, hearth, or window,—for the rough, direct action of eminent domain, which takes what it wants because it wants it, although it must pay for it.

"The purpose of the two powers is different; the one extraordinary, to supply the pressing emergencies, the other ordinary, to meet the daily wants of the state. . . . Without

pursuing further this subject of differences between the meaning and application of these cognate powers of government— better after all understood practically than described—what feature of this statute assessing persons benefited by these improvements to the extent of half the damage paid to others on account of them, and not exceeding the amount of the benefits received, assimilates it to an exercise of the power of eminent domain?

"There is no *seizure* or *taking* of any man's land, or goods, or money for the public use, provided for by this clause of the act. The act proceeds upon the basis that the public good requires the improvement to be made, and that it has a right to tax for it; and neither of these propositions is denied by the objectors to the act."

As has been seen, the act under which the location in the case now before us was made contained no provision for the assessment or set-off of benefits. The measure of damages, therefore, in this case, is the value of the land taken and such special damages, if any, as were caused to the remainder by the location of the railroad. For the land taken the owner must receive the just compensation provided by the constitution, that is, the value of the land taken. When we come to the second item, the damage to the remainder of the tract, then the constitutional provision has been satisfied, compensation has been made for the land taken; and the fact of damage to said remainder is to be established like any other fact, that is, by evidence. The special damages, if any, are to be shown, and also, the special benefits, if any, and if the special damages exceed the special benefits, then the excess is the amount of the damage to such remainder, and is to be added to the value of the land taken to ascertain the whole damage. If, however, the special benefits to said remainder equal or exceed the special damages to the same, then said remainder has not been damaged. *Atlanta* v. *Central, etc., R. R. Co.,* 53 Ga. 120; *Hayes* v. *Ottawa, etc., R. Co.,* 54 Ill. 373; *Todd* v. *Kankakee, etc., R. Co.,* 78 Ill. 530; *Elizabethtown, etc., R. Co.,* v *Helm's Heirs,* 8 Bush. (Ky.) 681; *Henderson, etc., R. Co.* v *Dickerson,* 17 B. Mon. (Ky.) 173; *Louisville, etc., R. Co.* v. *Thompson,*

18 B. Mon. (Ky.) 735; *Shipley* v. *Baltimore, etc., R. Co.*, 34 Md. 336; *East Tennessee, etc., R. Co.* v. *Love*, 3 Head. (Tenn.) 63; *Paducah, etc., R. Co.* v. *Stovall*, 12 Heisk. (Tenn), 1; *Woodfolk* v. *Nashville, etc., R. Co.*, 2 Swan (Tenn), 424; *Milwaukee, etc., R. Co.* v. *Eble*, 4 Chand. (Wis.), 72; *Washburn* v. *Milwaukee, etc., R. Co.*, 59 Wis. 364.

The court erred in the admission and rejection of evidence as follows:

1. In not permitting the witness Dean, who had been called as an expert on real estate. values, to answer (page 29): "Q. What in your opinion, Mr. Dean, was the value of the land taken by the railroad in the center of Allen's avenue in front of these lots just south of Public street and in Allen's avenue at the time, July, 1891? " The appellant had a right to prove the value of the land taken.

2. In permitting the witness Flint to answer (p. 113): "Q. Was there any special benefit that that land (the land he bought) was going to get from having a railroad in Allen's avenue? " It was immaterial what benefit he was going to get.

3. In permitting the witness Almy to answer (p. 126): "Q. Why did you locate there? " His reasons for locating there were immaterial.

4. In not permitting the witness Horton to answer (p. 163): "C. Q. Suppose that land on Allen's avenue—a large business was established on, we will say, Mr. Tiffany's land where it is located, had a great deal of freight was coming by water, and that freight was being distributed around in the city of ·Providence, being used in the city of Providence, that there was no spur track on Mr. Tiffany's land, or you could not get a spur track, that the forty feet in the middle of Allen's avenue was occupied by the railroad for railroad purposes—that is, the whole forty feet used, filled with tracks, and that Allen's avenue was the only outlet from Mr. Tiffany's land to the city, would you say in that case that the location of the railroad was a benefit? " The question did not assume any condition that was not possible under the railroad's location in Allen's avenue and was proper in cross-examination.

5.   In permitting the witness Rhodes to answer (p. 173): " Q.. What has the effect of laying that railroad in 1891 been on property abutting on Allen's avenue so far as the net result has obtained after deducting the special damage from the special benefits or *vice versa.*"   The witness had been called to testify as to real estate values, and had been an assessor of taxes in Providence for many years.   He could not well be expected, however, to know and discriminate between the terms special and general as applied to benefits and damages.   The question as to the net result "after deducting the special damages from the special benefits or *vice versa*" would be for the jury under proper instructions by the court as to what would constitute special damages and special benefits.

6.   In not permitting the witness Todd to answer (p. 179): "C. Q.   They always get spur tracks, do they, when they ask for them?"   The witness had just said, in answer to the preceding question, "of course, having a railroad there they would naturally get a spur track for your manufacturing concern there by asking for it," and the question under the circumstances was entirely proper.

The appellant's exceptions to the above rulings are sustained.

The claimant took many other exceptions to the admission and rejection of evidence.   They are covered, however, by the discussion of points hereinbefore considered, and are overruled.

The appellant requested the court to charge the jury as follows:

1.   "That in estimating the damages of the claimant, the jury are to allow him the full fair value of the land taken in Allen's avenue for railroad purposes, which lies in front of his land and east of the center line of Allen's avenue; and are also to allow him one-half of the full fair value of the land taken in Allen's avenue for railroad purposes, which lies east of the center line of Allen's avenue and in front of the lands of which he owns an undivided one-half part.   And in estimating such values they are to take into consideration the value of the claimant's land bounding on said Allen's avenue."   This request was properly refused.   It should have been qualified by the statement that the value to be allowed was the value subject to the

easement of the public highway. In the form in which it was presented it was very likely to mislead the jury. The exception is overruled.

2. "That the railroad company has the exclusive right to the use of its location, forty feet in width, taken by it in Allen's avenue, and the public have no right to use it for highway purposes, and in estimating the damages to the claimant's lands, not taken by the railroad, the jury should estimate such damages as though the railroad company had inclosed such location and excluded the public therefrom." This request was properly refused. This question has been passed upon *supra.* The exception is overruled.

3. "That in estimating the damages to the claimant's lands, not taken by the railroad, the jury should not deduct from such damages any benefits to such lands, resulting from the location of the railroad in Allen's avenue, which are shared generally by other lands along the line of such location." This was refused as having been already charged, and the claimant was not harmed thereby. The exception is overruled.

4. "That in computing the claimant's damages, all doubts as to the amount of such damages are to be resolved in favor of the claimant." This request was properly refused. The exception is overruled.

The claimant also excepted to the following portions of the charge of the court:

1. "That the possibility, the right which the abutting owners on this street had to put a spur track in there is a special benefit to the abutting owners different from the benefit of increased facility to the general public; and it is a benefit for which you should allow the railroad whatever it is worth." This instruction was erroneous in assuming that the abutting owners had a right to put in a spur track. The exception is sustained. The possibility of a spur track would be a proper subject for consideration, but the right to demand a spur track did not exist.

2. "That no damages are to be allowed for inconvenience suffered in common with the rest of the public." This instruction was proper. The exception is overruled.

3. "That you are not to consider the tide-flowed lands in estimating damages." This instruction was proper. The exception is overruled.

The cause is remanded to the Superior Court for a new trial.

*William A. Morgan*, for claimant Tiffany.

*Lewis A. Waterman*, for respondent railroad company.